In re Steven P. GIANAKAS, Condessa Del Mar Inc., and Hickory Properties, Inc., Debtors.

Steven P. GIANAKAS, Condessa Del Mar Inc., and Hickory Properties, Inc., Plaintiffs,

v.

The EXCHANGE NATIONAL BANK OF CHICAGO, Defendant.

No. 85 C 5852.

United States District Court, N.D. Illinois, E.D.

Dec. 16, 1985.

Jerome B. Meite, McDermott, Will & Emery, Chicago, Ill., for plaintiffs.

Ronald W. Hanson, Sidley & Austin, Chicago, Ill., Daniel L. Hughes, Hazel Crest, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This interlocutory bankruptcy appeal raises issues that only lawyers (or perhaps court administrators) would be interested in. Distilled of legal niceties and side issues, this case boils down to the following question: do parties who want to remove a bankruptcy case from state to federal court have to file their removal papers with the clerk of the district court or the clerk of the "bankruptcy court"?[1] In the context of this district, the question really reduces to whether such papers must be filed on the twentieth floor (where the district court clerk is) or twenty-second floor (home of the bankruptcy court clerk) of the Dirksen Federal Building. While it will become clear that this issue is not as trivial as it sounds at first, it is hardly monumental: we are not called upon here to decide whether Article III of the Constitution as constructed by the Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), affected the power of the bankruptcy judge to hear the merits of this case. The parties seem to agree that this case *could have* been heard by a bankruptcy judge. They dispute whether the case got to the judge along the right path. For reasons stated below, we hold that it did, and thus we affirm the bankruptcy judge's decision on

that point and remand for further proceedings.

### A. *Procedural Background*

In 1981, plaintiffs ("Gianakis") filed petitions for relief with the bankruptcy court under Chapter 11 of the Bankruptcy Code. On March 1, 1983, the bankruptcy court confirmed the Gianakis Reorganization Plan, which included payment of about $1.6 million (including attorneys' fees and interest) to present defendant Exchange, a former creditor. On January 2, 1985, Gianakis sued Exchange in Cook County Circuit Court, apparently alleging that some of the money had been paid under duress, and that attorneys' fees and interest had been improperly calculated.

Gianakis served Exchange on January 9.[2] On February 8, Exchange filed a timely "Application for Removal" in the clerk's office for the bankruptcy court. Three months later, Gianakis moved the bankruptcy judge to remand the case to state court. He based his motion on 28 U.S.C. § 1452(a), which Congress had passed as part of its comprehensive overhaul of the bankruptcy system, titled the "Bankruptcy Amendments and Federal Judgeship Act of 1984," Pub.L. 98–353 (July 10, 1984) ("the 1984 Act"). That section says:

(a) A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

28 U.S.C. § 1334, mentioned in § 1452(a), vests jurisdiction of bankruptcy matters in the district courts. Gianakis argued that Exchange's Removal Application did not give the bankruptcy judge jurisdiction, since it was not filed with "the district

---

1. We use the words "bankruptcy court" somewhat loosely. As described later in this opinion, the bankruptcy court is no longer a distinct entity, but is a "unit" of the district court.

2. All relevant events mentioned from here on happened in 1985. Thus, we will not use the year when we state dates.

court," but rather was filed with the "bankruptcy court." Gianakis relied on two recent cases, *In Re Schuler*, 45 B.R. 684 (Bankr.D.N.D.1985) and *In Re Long*, 43 B.R. 692 (Bankr.N.D.Ohio 1984), which both held that removal applications must be filed with the district court (i.e., that court's clerk) and that bankruptcy courts lack subject matter jurisdiction of cases removed directly to them via their own clerk's office. The bankruptcy judge in this case disagreed and orally denied the motion.[3] Gianakis then brought this interlocutory appeal.

## B. *Appealability*

■ Before reaching the issue on appeal, we must decide whether an interlocutory appeal is proper here. Exchange has moved to dismiss the appeal, claiming it is not. We disagree and grant Gianakis leave to appeal.

Normally a district court will hear appeals only of "final judgments, orders, and decrees" of bankruptcy judges. 28 U.S.C. § 158. The bankruptcy judge's decision denying the motion to remand to state court is obviously not a "final" one. However, district courts have discretion to hear appeals of interlocutory orders. *Id.* While district courts should exercise this discretion sparingly, we think it important to hear this appeal. If Gianakis is correct on the merits, then bankruptcy judges in this district are commonly ruling in removed cases over which they have no jurisdiction.[4]

Certainty and guidance are therefore needed in this area.

■ Exchange has not disputed this point, instead raising technical reasons for denying leave to appeal. Gianakis filed a timely notice of appeal on May 17, but did not file a motion for leave to appeal until June 14. Exchange argues that this runs afoul of Bankruptcy Rule 8001(b) which states in relevant part:

> An appeal from an interlocutory ... order ... shall be taken by filing a notice of leave to appeal ... accompanied by a motion for leave to appeal prepared in accordance with Rule 8003....

Rule 8003(a) defines the form and content of the motion for leave to appeal. While the language of Rule 8001 appears mandatory, Rule 8003(c) makes clear that it is not, saying:

> C. *Appeal Improperly Taken Regarded as a Motion for Leave to Appeal.* If a required motion for leave to appeal is not filed, but a notice of appeal is timely filed, the district court or bankruptcy appellate panel may grant leave to appeal or direct that a motion for leave be filed. The district court or the bankruptcy appellate panel may also deny leave to appeal but in so doing shall consider the notice of appeal as a motion for leave to appeal....

Under Rule 8003(c), then, Gianakis did not waive its chance at an appeal by filing its motion late.

■ Exchange's second technical argument also lacks merit. It argues that 28

---

**3.** This is what the bankruptcy judge said:

> Well, I'm going to deny that.
> I think that at best, it's technically going back to the District Court and I'm sure it would be referred right back here from the District Court.
> That Motion will be denied. (Transcript, 5/9/85, p. 10).

Although in the end, we affirm the result he reached, we do not endorse his summary methods. While a long opinion or even a written one was not necessarily required to refute the well-reasoned contrary (albeit, incorrect) published opinions by two other bankruptcy judges, some statement of statutory or legal analysis would have been helpful to this Court and was

deserved by the parties. Merely calling Gianakis' position "technical" does not suffice. It obviously is technical, but the court's jurisdiction hinged on that technicality. A lot of time and money would have been wasted if the case had proceeded to the merits and the technicality turned out to have been what Congress intended.

**4.** Upon inquiry by the Court, both the district and bankruptcy courts' clerk's offices reported that removal applications, as well as other bankruptcy papers, are being filed and received in the bankruptcy clerk's office. We take judicial notice of these functionings of our court administration.

U.S.C. § 1452(b)[5] precludes this appeal of the bankruptcy judge's denial of the motion to remand. But that section precludes review of remand decisions based on "equitable" grounds, made "under this subsection," that is, § 1452(b). Gianakis' motion to remand was made under *§ 1452(a)*. The denial of a remand was a legal decision about subject matter jurisdiction, not a discretionary equitable decision. Exchange's argument is therefore patently baseless.

In sum, then, we grant Gianakis' motion for leave to appeal and deny Exchange's motion to dismiss. We are thus ready to turn to the merits of the appeal.

### C. *The Merits*

■ Enacted in the wake of *Northern Pipeline*, the 1984 Act reconstituted the system of bankruptcy administration and jurisdiction. Under the 1978 Act, the bankruptcy court, although an "adjunct" to the district court, was essentially an independent court with comprehensive jurisdiction over Title 11 cases. *See* 28 U.S.C. § 1471(c) (1982). District court jurisdiction was to be effectively limited to appeals of bankruptcy court decisions. 28 U.S.C. § 1334 (1982) (to have been effective April 1, 1984). The removal provision of that Act permitted removal from state court of certain cases "to the bankruptcy court." 28 U.S.C. § 1478(a) (1982). In contrast, the 1984 Act vests jurisdiction of Title 11 cases only in the district court. 1984 Act, § 101(a) (now codified at 28 U.S.C. § 1334). There is now no "bankruptcy court" as such, but rather "the bankruptcy judges ... constitute *a unit of the district court* to be known as the bankruptcy court...."

1984 Act, § 104(a) (emphasis added) (codified at 28 U.S.C. § 151). Under the new 28 U.S.C. § 157(a), bankruptcy judges may hear only those proceedings that district courts refer to them.[6] The new removal provision, quoted above at 3, now authorizes removal "to the district court."

Gianakis' argument is simple, and, at first glance, persuasive. New § 1452(a) in plain language allows removal to *"the district court."* No provision like § 1478 now exists which allows removal to "the bankruptcy court." Bankruptcy judges only acquire jurisdiction by reference. Thus, concludes Gianakis, the plain language and structure of the new Act compels removal initially to the district court and then referral to the bankruptcy "unit." The consequence for this case, argues Gianakis, is that the bankruptcy court did not have jurisdiction over the case since the removal application was filed with the clerk of the bankruptcy court, not the clerk of the district court. The proper procedure, he contends, would be to file papers with the district court clerk, who would then ship the papers to the bankruptcy clerk under the general referral order. As noted earlier, two bankruptcy judges in other districts have adopted Gianakis' construction of the 1984 Act.

While surely plausible, this reading of § 1452(a) is not a necessary one. Indeed, Gianakis' argument plants the seeds of a contrary (and more persuasive) argument. Both parties agree that the same Act that authorizes removal to "the district court" also defines the bankruptcy judges as a

---

**5.** That section states:

(b) The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise.

**6.** The Chief Judge of this district entered a general referral order immediately after the President signed the 1984 Act. That order says:

The President having signed into law the Bankruptcy Amendments and Federal Judgeship Act of 1984, it is ordered as follows:

Section 157(a) Chapter 6 of Title 28 United States Code, states that "Each district court may provide that any and all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."

In accordance with this provision it is the order of the court that all such cases and proceedings now pending in the bankruptcy court or hereinafter filed are so referred. Gianakis does not contend that this case falls outside the scope of this general referral order.

"unit" of "the district court."[7] *See* 28 U.S.C. § 151. As such, the seemingly unequivocal reference in § 1452(a) to "the district court" is not so simple after all. A case *is* arguably removed to "the district court" when it is removed to a unit, a part of, the district court, that is, the bankruptcy court. Under this logic, removal papers are properly filed with the clerk of the bankruptcy court since that court is, in effect, a subset of the district court. This argument is enhanced in light of the canon of construction which teaches us to view the words and phrases of a statute in the context of the whole statute, not in isolation. *See, e.g., Kokoszka v. Belford*, 417 U.S. 642, 650, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374 (1974); *Brach v. Amoco Oil Co.*, 677 F.2d 1213, 1220 (7th Cir.1982). Thus, the words "the district court" in § 1452(a) must be read together with § 151's inclusion of bankruptcy judges in the district court apparatus.

The issue can thus be framed as follows: Gianakis' argument is that the words "to the district court" imply the corollary, "and *not* to the bankruptcy unit of the district court." Exchange's position is that "to the district court" implies the corollary, "including the bankruptcy 'unit' of the district court, as defined in 28 U.S.C. §§ 151 and 157(a)."

Faced with the above ambiguity in the meaning of "the district court," we would normally look to the legislative history for evidence of legislative intent. But the history of the 1984 Act says nothing revealing about § 1452(a). There is no House or Senate Report. Only the opinions of a few members of each house are recorded, and these do not even mention § 1452(a). *See* 1984 U.S.Code Cong. & Adm.News 576. We are left then with only the tools at hand: the comparison of language and structure of the current Act and of the now defunct 1978 Act, our knowledge of the relevant history of bankruptcy reform and a dash of common sense.

We think Exchange's reading of § 1452(a) makes more sense than Gianakis' and would not frustrate congressional intent. Our conclusion flows from three premises. First, it is clear that by virtue of §§ 151, 157 and 1452(a), Congress intended that bankruptcy judge *could* hear cases removed from state court. Gianakis does not dispute this. It is also clear by definition that Congress re-created the bankruptcy court as a "unit" of the district court; it follows that the bankruptcy court clerk's office for this district is essentially an administrative unit of the entire district court apparatus. Finally, it is clear that in reacting to *Northern Pipeline*, Congress wanted to maintain continuity in the functioning of the bankruptcy system, while remaining faithful to the teachings of *Northern Pipeline*. Given these premises, the central issue can be restated: did Congress in enacting § 1452(a) intend to prohibit the new "bankruptcy court"—concededly no more than a unit of the district court—from receiving removal papers in a type of case previously referred to it by general order under § 157(a)? We think not. Placed in this light, Gianakis' argument is that Congress intended that removal papers be filed in a part of the district court where the case would not be heard, only to have the papers transferred to the part of the district court where it would be heard. Absent strong evidence of contrary intent, we

---

7. In a different context, one bankruptcy judge aptly describes the structure of the new system as follows:

   I assume when the defendants state in their motion that "this court" lacks jurisdiction, it is referring to the bankruptcy court. However there really is no bankruptcy court except in name. The term "bankruptcy court" is solely a phrase that is applied to the bankruptcy judges for a district insofar as those judges together are a unit of the district court. 28 U.S.C. § 151. Thus while functionally there may appear to be a separate bankruptcy court, for jurisdiction purposes there is only one court, i.e., the district court. Making this distinction has some relevance to the defendants' motion since "this court", i.e., the district court, *does* have jurisdiction over the subject matter of this proceeding and that jurisdiction is constitutional. Thus dismissal obviously is not warranted.
   
   *In Re Northwest Cinema Corp.,* 49 B.R. 479, 13 B.C.D. 44, 44–45 (Bankr.D.Minn.1985).

will not impute to Congress an intent to inject a meaningless step into a ministerial process.

We do not think that Congress would insert a meaningless step in its removal mechanism unless it felt that *Northern Pipeline* commanded it to do so. But Gianakis does not argue that this extra administrative step is somehow commanded by Article III as construed in *Northern Pipeline*. Nor do we think the teachings of *Northern Pipeline* demand such a step. *Northern Pipeline* basically held that the 1978 Act improperly vested Article III powers in non-Article III judges. The 1984 Act seeks to correct these jurisdictional defects. But the precise issue here really has nothing to do with *Northern Pipeline*. We therefore do not see the change from "to the bankruptcy court" in old § 1478 to "to the district court" in § 1452(a) as significant in the present context. The change is not a command *to* file removal papers with the district court's clerk and *against* filing such papers with the clerk of the bankruptcy unit of the district court. Rather, the wording change merely reflects the fact—expressed in §§ 151 and 157—that the "bankruptcy court" as such no longer exists as a distinct jurisdictional entity, but is subsumed within "the district court" apparatus. Congress obviously would not authorize removal to a phantom court. At the same time, it could, and did, authorize removal to that "court," resurrected as a unit of the district court.[8]

If Gianakis were correct, absurd results would follow in different contexts as well. Should not, under his logic, the 1984 Act and the general referral order require that *all* bankruptcy papers be filed with the district court's clerk and not the bankruptcy court's clerk, and then have them referred? After all, § 1334 vests jurisdiction in the *district court*, not the bankruptcy court, which acquires its power only via referral. We think that so long as a gener-

al referral order is in place, this bizarre system obviously would not have been intended by Congress and was not intended by the referral order itself. Instead, we see § 157 and the referral order as generally authorizing the bankruptcy clerk's office to accept filings in species of cases which have already been referred by this general fiat. That is, the referral order and mechanism are essentially administrative: A *class* of cases is referred generally to the bankruptcy unit, whose own clerk's office accepts filings; but the scheme was clearly not set up to shuttle every individual paper and pleading from one clerk's office to the next.

Gianakis does not really dispute the practical absurdity of the scheme it endorses. Instead, it argues that, for better or worse, this is Congress' scheme, and it is up to Congress, not this Court, to work the kinks out of the system. If the meaning of "to the district court" unambiguously supported Gianakis, then we would have to obey Congress' orders, however absurd. But we have shown that these words are ambiguous, since the very same Act in which they appear also includes bankruptcy judges (and, derivatively, their clerk) as part of the district court. Given this ambiguity, the absurdity of the system Gianakis proposes *is* a relevant factor for us to consider as we try to determine legislative intent. In determining congressional intent, courts are loathe to conclude that Congress intended the absurd or bizarre. *See, e.g., American Tobacco Co. v. Patterson*, 456 U.S. 63, 71, 102 S.Ct. 1534, 1538, 71 L.Ed.2d 748 (1982); *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). We will not do so here.

The logic of the two cases Gianakis relies upon suffers from the same defect as does his reasoning. They implicitly assume that the words "to the district court" are clear,

---

**8.** Mandating removal to "the district court" is consistent with the idea that referral is optional. If a district enacts no referral order, then cases obviously are removed "to the district court" itself, i.e., to its clerk's office. A referral order simply has the administrative effect of routing filings to a different unit of the district court, one authorized by § 157 and created by the referral order itself.

and prohibit filings with the bankruptcy unit of that court. The *Long* case, for example, does an excellent statutory analysis in showing that § 1478 is no longer effective, giving way to § 1452(a). We agree fully with that court up to that point. *See* 43 B.R. 692–97. But for the reasons stated earlier, § 1452(a) does not prohibit filing with the bankruptcy unit of the district court if a general referral order is in place.[9]

## D. *Conclusion*

The decision of the bankruptcy judge denying the motion to remand to state court is affirmed. In light of this ruling, we need not discuss the other issues the parties raise. The case is remanded to the bankruptcy judge for further proceedings. It is so ordered.

---

**9.** It is unclear whether a general referral order was in effect in *Long*. The court there noted:

> If BancOhio wishes this court to hear said action, then it must move the district court for an order referring said action to this court as provided for by 28 U.S.C. Section 157(c)(2).

43 B.R. at 697. It thus appears that no general § 157(a) referral order was in place there, as it is here. If not, our opinion is not necessarily inconsistent with *Long's*. If cases had to be referred one-by-one, then filings would have to be made with the district court clerk. One bankruptcy judge, *in dictum,* cites *Long* in this regard and suggests as we hold that if a general referral order is in place, direct filing with the bankruptcy court is proper. *See In Re Kennedy,* 48 B.R. 621, 623 n. 2 (Bankr.D.Ariz.1985). Of course, *Schuler* is directly opposed to this position, and we reject the holding in that case.