In re Douglas **HUFF**, Jr., Debtor.

**AMERICAN NATIONAL BANK**,
Plaintiff-Appellee,

v.

Douglas **HUFF**, Jr., Debtor-Appellee,

and

**The Illinois State Board of Investments, Amicus Curiae-Appellant.**

Nos. 85 C 6788, 85 C 6844.

United States District Court,
N.D. Illinois, E.D.

Feb. 5, 1986.

Floyd D. Perkin, Chicago, Ill., for Illinois State Bd. of Investments.

Laurence H. Kallan, Arnstein, Gluck, Lehr, Barron & Milligan, Chicago, Ill., for American Nat. Bank.

Philip Levey, Chicago, Ill., for trustee.

Alan H. Slodki, Chicago, Ill., for Douglas Huff, Jr.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This bankruptcy appeal is a procedural swamp. Neither the appellant nor the appellee were formal parties to the proceedings below. Both had merely filed amicus briefs. The party most directly affected by the events below, the debtor, has not appealed. It should be obvious, then, that there are procedural obstacles to our hearing the merits of the appeal. For one thing, the appellant and appellee have noticed that a serious issue exists as to appellant's standing to appeal. In addition, the Court has found—and is bound to raise—other threshold jurisdictional issues. We must decide whether we may properly hear this interlocutory appeal, and we also must consider a related question of ripeness. After wading through these closely related procedural issues, we hold, for the reasons stated below, that the prudent course is to dismiss the appeal and remand the case to the bankruptcy court for further proceedings.

I. *Factual and Procedural Background*

Douglas Huff, Jr. ("Huff"), a state employee, is the debtor who initiated the Chapter 7 bankruptcy proceeding below. He listed as one of his assets $14,000 in contributions he has made to the Illinois State Employee's Deferred Compensation Plan ("ISEDCP" or "the Plan"). He claimed that his interest in the Plan is exempt from his bankruptcy estate. The trustee objected.

The voluntary Plan was created to allow employees to defer income (and, thus, federal tax liability) until retirement. The employee chooses the amount he or she wants to contribute, and that amount is deducted directly from each paycheck. The employee can choose to stop making payments at any time. But before retiring, an employee can reach the funds only in three circumstances: (a) at termination of employment, (b) death, or (c) "extreme financial hardship." Apparently, bankruptcy is not automatically "extreme hardship" as defined by the Plan, as Huff applied for and was denied a withdrawal on this basis.[1]

The employees cannot assign their interest in the Plan, and their interest is purportedly exempt from bankruptcy under state law.[2] Moreover, the Plan provides that the State "owns" the assets in the Plan, decides how they should be invested and is the beneficiary of income from the corpus.[3] Thus, it is clear that Huff's interest in his contributions is a future one, vesting only when one of the three conditions mentioned above is met. This is unlike the situation with many other pension funds or retirement schemes, which allow immediate access, subject to some penalty.

Appellant, the Illinois State Board of Investment ("ISBI"), the state body responsible for managing the Plan, filed an *amicus curiae* brief below in support of Huff's exemption position. ISBI did not seek leave to intervene at any time, despite its assertion that it "owns" the assets of the Plan. Appellee American National Bank ("the Bank"), a judgment creditor, filed an *amicus* brief in support of the trustees' objection to the exemption. The bankruptcy judge sustained the trustee's objection, holding that the funds in the Plan were both includable in the estate as a general matter and not exempt under any specific exemption. 42 B.R. 553 (Bankr N.D.Ill. 1984). Although Huff's interest in the funds is limited as described above, the judge apparently held that the whole $14,000 corpus was to be part of the estate and subject to the Bank's claimed lien. *See* 42 B.R. at 557 ("this Court concludes that funds held by the [ISBI] are part of the debtor's estate"). However, the opinion does not order the ISBI to turn over the funds.

---

1. Section 5.6 of the Plan defines "financial hardship" very narrowly. The hardship must be "serious" and "beyond ... control" of the employee. Examples include "a disability or unexpected and unreimbursed major expense resulting from illness or accident." However, "normally budgetable expenses" do not qualify, nor will withdrawals be allowed when "the participant had significant control and failed to exercise prudent judgment as to the cause of the emergency." Plan at 25, Sample E Hardship Form. Although the record is silent on this point, we suspect that Huff's hardship application was denied because he mismanaged his funds rather than incurred an unforeseeable, catastrophic expense.

2. ¶ 6.1 of the Plan reads in part:
 6.1 *Nonassignability.* The contract entered into between the Employer and a Participant through this Plan and the benefits, proceeds or payments thereunder cannot be sold, assigned, pledged, commuted, transferred or otherwise conveyed by any Employee, Participant or Beneficiary. Any attempt to assign or transfer shall not be recognized and shall impose no liability upon the Employer.

 \* \* \* \* \* \*

 Except as otherwise required by law, any Deferred Compensation monies withheld pursuant to this Plan shall not be subject to attachment, garnishment, or execution, or to transfer by operation of law in the event of bankruptcy or insolvency of the Participant or otherwise.

3. ¶ 6.1 of the Plan reads in part:
 The State of Illinois shall be the owner of all Deferred Compensation Accounts hereunder and shall be the sole beneficiary of any investment contract entered into pursuant to this Plan. The Board shall be the custodian of any investment contracts and shall take the steps necessary to provide a place of safekeeping for them.

Following this opinion, the ISBI filed a motion to amend or reconsider the opinion. Among other things, ISBI argued that the judge's opinion apparently included in the estate a greater property interest than Huff had. The Bank objected, arguing that Huff had not moved for reconsideration, and that ISBI, as *amicus curiae,* lacked standing to do so. The ISBI responded that the opinion threatened it with two types of "potential injury": first, it "could be required" to disburse its own monies, since it "owns" the Plan's assets; second, it claimed that the opinion jeopardized the Plan's qualified status with the Internal Revenue Service. *See* Memorandum in Response to Bank's Motion to Strike at 3. Alternatively, it claimed it was an indispensable party which had not been joined, and thus could not be bound by the opinion. The bankruptcy judge ultimately denied ISBI's motion to amend, without stating its reasons. Instead, he merely stated that the denial was "without prejudice to the [ISBI] to raise any of the matters asserted therein in any subsequent proceedings." *See* Order of July 12, 1985. The ISBI appealed to this Court.

## II. *Appealability: Standing, Finality and Ripeness*

At the outset, we note that neither party has recognized that this is an interlocutory appeal. Normally a district court will hear "appeals from final judgments, orders, and decrees" of bankruptcy judges. 28 U.S.C. § 158(a); *In re Gianakas,* 56 B.R. 747, 749, (N.D.Ill.1985). No "final decision" has been rendered in the court below. While the bankruptcy judge has written an opinion holding that the $14,000 be included in the estate, no order has been entered to carry that out. Moreover, the issue of whether the Bank's lien was valid was held in abeyance pending outcome of the central issue. *See Amicus* Memorandum of Bank in Support of Trustee's Objection at 3 n.1. To our knowledge, that issue has not been formally resolved. In normal civil litigation under 28 U.S.C. § 1291, an order is not "final" unless it "ends the litigation ... and leaves nothing for the court to do but execute the judgment." *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945); *Local P-171 v. Thompson Farms Co.,* 642 F.2d 1065, 1069 (7th Cir.1981). The opinion of the bankruptcy judge and denial of the motion to amend clearly fall short of this rule. However, bankruptcy proceedings are unique, since they typically involve many discrete disputes as various creditors assert their claims against the estate. For that reason, courts have relaxed the usual finality rule in the bankruptcy context. *See In re Amatex Corp.,* 755 F.2d 1034, 1039 (3d Cir. 1985); *In re Saco Local Development Corp.,* 711 F.2d 441, 443–48 (1st Cir.1983); *In re Mason,* 709 F.2d 1313, 1316 (9th Cir.1983); 1 *Collier on Bankruptcy* ¶ 3.03[6][b] (15th Ed.1985). Courts have viewed finality in this area "pragmatically." *See, e.g., Amatex,* 755 F.2d at 1039. Thus, rather than considering the whole bankruptcy case as the "judicial unit" for purposes of appeal, courts have held that each "proceeding" within a bankruptcy case is the relevant judicial unit for purposes of finality, and that a "final" order is one that "conclusively determines a separable dispute over a creditor's claim or priority." *Saco,* 711 F.2d at 441; *see* 1 Collier ¶ 3.03[6][b] at 3–121—3–124. While the adversary proceeding below is the relevant "judicial unit" for finality purposes, the dispute between the Bank and Huff has plainly not been "conclusively determined."

Nor does this case fall within the exception to the finality doctrine found in *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1945). Under the Cohen "collateral order" doctrine an order will be considered "final" if it (1) finally determines rights collateral to and separable from the main proceeding; (2) presents a serious and unsettled question; and (3) is effectively unreviewable on appeal from final judgment such that denial of immediate review will harm appellant irreparably. *See, e.g., Matter of Cash Currency Exchange, Inc.,* 762 F.2d 542, 547 (7th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 233, 88 L.Ed.2d 232 (1985). Even if criteria (1) and (2) were

satisfied here, criterion (3) clearly is not. ISBI has not been harmed at all yet, and delay will not harm it either. It has not been ordered to turn over the funds, and the bankruptcy judge's denial of its motion to amend was without prejudice to it. There is no reason it cannot appeal later after a truly final order has been entered,[4] directly implicating its interests.

■ Our determination that this appeal is interlocutory and not appealable as of right does not end the inquiry. A district court has discretion to hear interlocutory bankruptcy appeals. 28 U.S.C. § 158(a). To perfect an interlocutory appeal, appellant is supposed to move for leave to appeal when he files his notice of appeal. *See* Fed.Bankr. Rule 8001(b). ISBI did not do so. But this failure is not automatically fatal. When no motion is filed, the district court may grant leave to appeal, direct that a motion for leave be filed or deny leave to appeal (but in so doing consider the notice of appeal as a motion for leave to appeal). *See* Fed.Bankr. Rule 8003(c). We take the last course: considering the notice of appeal as a motion for leave to appeal, we deny leave to proceed with this interlocutory appeal.

As we suggested in *Gianakas,* interlocutory appeals should be the exception rather than the rule. True, we do not stand in relation to the bankruptcy court as the appellate court does to us. The bankruptcy court is a "unit" of this Court, *see* 28 U.S.C. § 158; *Gianakas* at 750, and § 158 clearly grants the district court discretion to hear interlocutory appeals. Thus, it can be said that a district court may properly hear interlocutory appeals where the circuit

court could not do so. And there will be cases, like *Gianakas,* where policy reasons compel a court to do so. *See* at 749. But we should not be too liberal with this discretion. Like an appellate court hearing appeals from the district court, we do not want to encourage piecemeal appeals. This problem could become especially acute in the bankruptcy context, where, as noted above, each case may have several distinct debtor-creditor disputes, each one a "judicial unit" with many interlocutory orders.

Unfortunately, § 158(a) does not teach us how free to be with our discretion. In *Gianakas* we simply noted that it was important to resolve an unsettled issue of systemic importance. In trying to give meaning to § 158(a), other courts have drawn analogies to appellate court doctrines concerning interlocutory appeals. One court loosely applied the *Cohen* doctrine in deciding to hear an interlocutory appeal. *See In re Nitec Paper Corp.,* 43 B.R. 492, 494–95 (S.D.N.Y.1984). We have already seen that the *Cohen* doctrine does not warrant our exercise of jurisdiction, even if we view the doctrine liberally. Another court relied by analogy upon 28 U.S.C. § 1292(b), which governs interlocutory appeals to the court of appeals.[5] *See In re Johns-Manville Corp.,* 45 B.R. 833, 835–36 (S.D.N.Y.1984); *also* 1 *Collier,* ¶ 3.03[6][d] at 3–126. Under this doctrine, the reviewing court may decide to hear the appeal if there are controlling questions of law as to which there is substantial ground for dispute and if an immediate appeal may materially advance the ultimate termination of the litigation.[6] *See, e.g., In re Johns-Manville,* 45 B.R. at 835. The first

---

4. ISBI contends that the bankruptcy judge's ruling somehow jeopardizes the special status of the Plan with the IRS. ISBI's fears, so far as we can tell, are purely speculative. It has not shown why, as a matter of law, the Plan would now be declared ineligible. Nor has it shown that the IRS plans to take any action. In sum, there is no apparent imminent danger to the tax-status of the Plan.

5. We think this analogy is sounder than the one based on *Cohen. Cohen* is really a doctrine for defining an exceptional type of finality. That is why we analyzed *Cohen* initially in our discus-

sion of finality. In contrast, § 1292(b) specifically speaks to interlocutory appeals and therefore offers an apt analogy to this context.

6. Of course, in the normal civil context the district judge first certifies these factors in the relevant interlocutory order. *See* § 1292(b). The appellate court then has discretion to refuse to hear the appeal. Since § 1292(b) applies here only by analogy, there is no requirement that the bankruptcy judge "certify" the issue for appeal. *See* 1 Collier ¶ 3.03[6][d] at 3–127.

part of this inquiry is probably satisfied. The issues on the merits are not easy and are open to reasonable disagreement. *Compare Huff*, 42 B.R. at 555–57 (state employee deferred compensation plan includable in and not exempt from estate), *with In re Sheridan*, 38 B.R. 52, 55–56 (state employee deferred compensation plan is not includable in estate, and even if it is, it is exempt).[7] But we think our rendering an opinion on this issue will not materially advance the ultimate termination of the litigation. True, this issue is the focal point of the proceedings below. But that can be said about many cases in which an important interlocutory order is entered. If this were a case where a prompt decision could save the parties much time and expense, then a decision would "materially advance" the case; or if a prompt decision could prevent some irreparable harm to a party, hearing the case would be proper. *See In re Johns-Manville*, 45 B.R. at 836. But we have seen that delay will not harm ISBI since it has not been ordered to do anything. And at this point in the case, the savings from a prompt decision will not be substantial and are speculative, for ISBI would have to win in order for litigation expenses to be minimized.

Even when both prongs of § 1292(b) are satisfied, a reviewing court need not review the case. *See* § 1292(b) (if two criteria met, appellate court "*may* . . . in its discretion, permit an appeal"). We think that even if the second prong were satisfied here, deviating from the usual final judgment rule would not be prudent in this unique case. There are serious overlapping questions concerning the ripeness of the appeal, as well as ISBI's standing, which counsel against an exercise of discretion in favor of reaching the merits.

 Normally an *amicus curiae* has no standing to appeal a lower court order. *See, e.g., Moten v. Bricklayers*, 543 F.2d 224, 227 (D.C.Cir.1976); 16 C. Wright, A. Miller, E. Cooper & E. Gressman, *Federal Practice & Procedure*, § 3975 (1977). This is merely a specific application of the general rule that a non-party has no standing to appeal. *See, e.g., United States v. LTC Corp.*, 746 F.2d 51, 53 (D.C.Cir.1984). One who intervenes can have standing to appeal, *id.*, but ISBI never sought intervention, even though the Bank invited it to do so. *See* Reply Memorandum in Support of Bank's Motion to Strike at 4.[8] In any event, there are exceptions to the rule that non-parties cannot appeal. *See generally LTV Corp.*, 746 F.2d at 53–54 n.5; 9 *Moore's*, ¶ 203.06 at 3–23. Perhaps the broadest formulation of the exception is found in the *Moore's* treatise: A non-party appellate may appeal if it is privy to the record and aggrieved by the order appealed from. ¶ 203.06 at 3–20 and 3–23. Clearly, ISBI was privy to the record below. But

---

**7.** We express no opinion on which opinion is correct. But regardless of which one is right, we do not agree with Judge Eisen that *Sheridan* is distinguishable. The only apparent material difference between the state Plans in *Huff* and *Sheridan* is the "extreme financial hardship" component to the Illinois Plan. *See* n. 1 above. However, that exception is extremely narrow, as described above, and barely makes Huff's interest more liquid than the debtor's was in *Sheridan*. Indeed, Huff's hardship application was denied following Judge Eisen's ruling. Thus, his interest now appears to be factually identical to that in *Sheridan*. Judge Eisen should consider these facts on remand, and either distinguish *Sheridan* on some other basis, indicate why *Sheridan* should not be followed or follow *Sheridan*.

**8.** Indeed, ISBI must bear some blame for the procedural mess it finds itself in. In fact, the

record suggests that it might have deliberately created the problem. Even though it was invited to intervene, and though intervention as of right under Rule 24 would likely have been allowed, it chose not to intervene. It thus put itself in a position of trying to "have its cake and eat it too." It participated below with a good chance of winning. Yet when it "lost," it tried to use its non-party status as a shield, arguing it should have been joined as an indispensable party under Rule 19 and cannot now be bound. We have found one case where the court bound a non-party who tried a similar ploy. *See Adams v. Morton*, 581 F.2d 1314, 1318–19 (9th Cir.1978). Although as discussed below, *Adams* lends some support to hearing this appeal, we thing the most prudent course is to exercise our discretion the other way in this interlocutory context.

while the decision below was clearly against its interests, ISBI has not yet been directly aggrieved by the opinion. The validity of the Bank's lien has not been determined, and ISBI has not been joined or ordered to do anything. Moreover, the denial of the motion to amend leaves its rights open. *See* above at 4. In this context, the standing and ripeness doctrines tend to merge, for ripeness has been described as an inquiry into whether the asserted injury "has matured sufficiently to warrant judicial intervention." *Warth v. Seldin,* 422 U.S. 490, 499 n. 10, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). The doctrines also overlap with the above discussion of finality. We have here a situation where the asserted injury is remote—it has not "matured"—in part because no final order, indeed no order at all, has been entered against it. ISBI has cited no case where a non-party was allowed to appeal where it was not subject to any order, and where its rights were not foreclosed by the lower court.

The analogous cases from the appellate courts offer no clear solution to the standing problem. *Compare, e.g., LTV Corp.,* 746 F.2d at 53–54 (dismissing appeal of non-party who participated in lower court but decided not to intervene and who was not effectively bound by court's judgment) *with SEC v. Lincoln Thrift Ass'n.,* 577 F.2d 600, 602–03 (9th Cir.1978) (aggrieved non-party may appeal even though it did not try to intervene); *Adams v. Morton,* 581 F.2d 1314, 1318–19 (9th Cir.1978) (non-party who participated extensively had become an intervenor-infact who was bound by judgment below and had standing to appeal), *cert. denied,* 440 U.S. 958, 99 S.Ct. 1498, 59 L.Ed.2d 771 (1979). Perhaps the best way to reconcile these cases is to focus on the point raised in *LTV Corp.* that the party there was not effectively bound by the order appealed from; its rights were not foreclosed. Such is the case here, as noted earlier. In contrast, in cases like *Lincoln Thrift, Adams* or those cited in

*LTV Corp.* at 53–54 n. 5, denial of appeal would effectively foreclose meaningful review of an order or judgment which bound the non-party appellant. Also, in cases where courts found standing, at least the orders appealed from were "final," unlike the case here.

We need not firmly decide the standing issue. Having decided already that the "order" appealed from was not final, the narrow question for decision is whether we should exercise our discretion to hear this interlocutory appeal. Our analysis of the standing issue reveals that ISBI's standing to appeal is in serious doubt. This doubt counsels against stretching to reach the merits when appellate jurisdiction is not otherwise mandatory.[9] This is especially true where, as here, a delay will not foreclose later and meaningful review on the merits.

In sum, then, we decline to exercise our discretionary jurisdiction to hear this interlocutory appeal, and therefore dismiss the case and remand for further proceedings. Among other things, on remand ISBI's status in the suit should be resolved. It either should seek leave to intervene or be joined as the indispensable party it claims it is. It should no longer be allowed to sit on the sidelines so that it can claim that it is not bound by the proceedings yet claim at the same time that the proceedings have wounded it enough to be heard.

Although we express no opinion on the merits, we do wish to flag an issue raised by ISBI which the bankruptcy judge did not address in his opinion. ISBI notes that the opinion below appears to hold that the whole $14,000 should be included in the estate. Yet, as we noted earlier, Huff has no present right to any of the funds. As such, the opinion arguably runs afoul of the fundamental rule of bankruptcy law that a trustee in bankruptcy can acquire no more rights to or interest in property than the debtor enjoyed when the petition was

---

9. Hearing the appeal here would truly be extraordinary, given all the unique facts. The appeal is (1) interlocutory, (2) raised by a non-party *amicus curiae,* (3) which has not been compelled to do anything, and (4) whose rights have not been otherwise foreclosed.

filed. *See, e.g. In re Shepard,* 29 B.R. 928, 932 (Bankr.M.D.Fla.1983). In other words, even if Huff's interest is includable and not exempt, *only* that much becomes part of the estate; if Huff has no right or access to the funds, neither does the trustee or creditors. We express no opinion on this issue, but suggest that it be adduced by the bankruptcy court.

For the foregoing reasons, the appeal is dismissed for want of jurisdiction, and the case is remanded to the bankruptcy court for further proceedings. It is so ordered.