In re Steven P. GIANAKAS, Condesa Del Mar, Inc. and Hickory Properties, Inc., Debtors,

Steven P. GIANAKAS, Condesa Del Mar, Inc. and Hickory Properties, Inc., Plaintiffs,

v.

The EXCHANGE NATIONAL BANK OF CHICAGO, Defendant.

No. 86 C 0708.

United States District Court, N.D. Illinois, E.D.

Dec. 18, 1986.

Edward F. Ruberry, William J. Mullins, Ruberry Palmer Phares Smetana & Braun, J. Barton Kalish, Chicago, Ill., for plaintiffs.

Ronald W. Hanson, Joshua J. Mintz, Sidley & Austin, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This case returns to us after an all too brief sojourn through the bankruptcy court system. Once again,[1] we have been invited to address a procedural problem involving this case bouncing between our Court, the bankruptcy court and state court. The Chapter 11 debtors, Steven P. Gianakas, Condesa del Mar, Inc. and Hickory Properties, Inc. (referred to collectively herein as "Gianakas"), filed a suit against the Exchange National Bank of Chicago ("Exchange") in state court seeking recovery of payments allegedly made by Gianakas to Exchange under economic duress and also requesting an accounting of attorneys' fees and interest calculations on a loan agreement. Exchange filed counterclaims and a petition for removal to the bankruptcy court and, after some dilemma over the propriety of the removal process, this Court affirmed the bankruptcy judge's de-

---

1. *See In re Gianakas,* 56 B.R. 747 (N.D.Ill.1985).

nial of Gianakas' motion to remand the case to state court. Upon remand to Bankruptcy Judge Charles McCormick, Gianakas filed a motion for abstention and subsequently moved this Court to withdraw the reference on that motion. Before this Court had a chance to act on the motion to withdraw the reference, Judge McCormick granted the pending motion for abstention on April 22, 1986. Subsequently, Exchange filed motions to vacate the April 22 order before both the bankruptcy judge and this Court. In accordance with this opinion, the motion to withdraw the reference is granted *nunc pro tunc*, the motion to vacate the April 22 order is allowed and the motion for abstention is denied.

We first turn to a dispute over the technical aspects of the motion to withdraw the reference filed by Gianakas following a status conference before the bankruptcy judge where the parties appeared to agree to have the district court deal with the abstention motion. Gianakas subsequently filed a motion to withdraw in the district court, and the proceeding was assigned by lot to Judge Susan Getzendanner. The local rules require, however, that where there has been an adversary bankruptcy proceeding previously assigned to a district judge on appeal, any subsequent motions or appeals in the same proceedings requiring district court attention must be assigned directly to the calendar of the same district judge. Local Rule 2.33(d), Northern District of Illinois. In compliance with this rule, we had the cause transferred from Judge Getzendanner's calendar to ours, and by minute order dated March 3, 1986, set a briefing schedule on the motion for abstention. We inadvertently did not enter a formal order withdrawing the reference on this matter, however, and that omission has caused some confusion among the parties. Because it was our original intention to withdraw the reference on the motion for abstention, we hereby grant the motion to withdraw *nunc pro tunc* to the March 3, 1986 date and will deal with the abstention motion on its merits.

Additionally, although Judge McCormick technically had jurisdiction to deal with the abstention motion since the motion to withdraw the reference was not formally granted, the parties filed their response and reply memoranda with the district court rather than the bankruptcy judge. Accordingly, it is not clear that Judge McCormick had the benefit of fully-briefed arguments from the parties at the time he made his ruling granting the motion for abstention. We deem it prudent, therefore, to vacate his April 22, 1986 order granting the motion for abstention and consider that motion anew.

The abstention motion stems from a state court action filed by Gianakas in January 1985 regarding payments allegedly made under duress to Exchange in relation to a loan transaction which had resulted in a secured claim under the Second Amended Integrated Plan of Reorganization ("the Plan"), which was approved by the bankruptcy judge in March 1983. Also included in this suit was a count seeking an accounting of certain attorneys' fees and interest on the underlying loan. Exchange filed counterclaims in the state court action which alleged that to the extent it was required to incur additional attorneys' fees in connection with determining the proper amount of its secured claim, those fees should be recoverable under the underlying loan documents and the confirmed Plan as an additional secured claim. It also sought to reinstate liens on Gianakas' assets in conjunction with these claimed fees and to seek remedies under the Plan for enforcement of certain obligations.

A brief description of the events leading up to the state court action may be helpful in evaluating the abstention claim. Exchange was a secured creditor of Gianakas when the latter filed a Chapter 11 petition. On March 2, 1983, the bankruptcy judge approved the Plan which provided for the payment of all secured claims. Exchange was to receive the entire amount of its secured claim which arose from the loan transaction mentioned above, although it was apparently not scheduled to receive the principal amount until November 1, 1984. Gianakas (actually Hickory Properties, Inc., one of the three entities whom we refer to as "Gianakas") was the beneficial interest

holder in certain real property, but it assigned its interest to Exchange to secure certain loan indebtedness. Gianakas alleged in its state court suit that it was attempting to sell the property in question following an annexation and rezoning which made the property more valuable, but that it needed a letter of direction from Exchange (as the beneficial interest holder) to the trustee approving the sale. According to the complaint, Exchange requested a payment of $115,000 in return for sending such a letter, and Gianakas claims that this constitutes a payment made under economic duress actionable under Illinois law. The sale of property was eventually approved, and in May 1984 Gianakas was able to close the sale and pay its secured creditors, including Exchange, with the proceeds.

Not surprisingly, Exchange's version of the $115,000 payment it received from Gianakas is quite different. According to Exchange, Gianakas approached it with a proposal that undisclosed investors wanted to buy an option to purchase Exchange's secured claim (the one due by November 1, 1984) at a discount. Exchange contends that the $115,000 payment was the price of the option and that Gianakas signed the option agreement for the purpose of certifying that the debtors were not the undisclosed principals nor the source of the money. Exchange also claims that Gianakas was in several respects in default of certain requirements of the confirmed Plan and that as part of the option agreement Exchange promised not to enforce the terms of the Plan at the time. According to Exchange, the letter of direction was not issued in return for the payment, but was simply given following Exchange's receipt and review of the proposed annexation agreement.

In addition to the economic duress claim, Gianakas' state court complaint includes a count for an accounting of Exchange's calculation of accrued interest, its application of Gianakas' principal payments made between November 1, 1982 and May 1984 and attorneys' fees which Exchange was claiming with respect to the secured claim. Exchange counterclaimed with a request for additional attorneys' fees incurred in determining the appropriate amount of the secured claim and arguing that such attorneys' fees constitute an additional secured claim. In conjunction with this argument, Exchange argued that if the fees are found to be an additional secured claim, it is entitled to reinstate a prior lien on Gianakas' assets and to pursue remedies under the Plan to enforce the obligation.

Gianakas argues that under the abstention provisions of the Bankruptcy Amendments and Federal Judgeship Act of 1984, 28 U.S.C. § 1334(c) (Supp. III 1985), this Court should abstain from deciding what are essentially state law issues unrelated to Gianakas' Chapter 11 reorganization. Exchange contends that Gianakas is simply trying to get this dispute back into state court after unsuccessfully moving for remand.[2] It also argues that abstention would not be proper because (1) the mandatory abstention provision, 28 U.S.C. § 1334(c)(2), does not apply to proceedings filed before July 10, 1984; (2) discretionary abstention under 28 U.S.C. § 1334(c)(1) is not appropriate where issues which are fundamentally related to the underlying bankruptcy proceeding are at hand; and (3) the motion for abstention is not timely.

We first agree with Exchange that the mandatory abstention provision does not apply here. Section 122(b) of the Bankruptcy Amendments and Federal Judgeship Act of 1984 clearly provides that "Section 1334(c)(2) of Title 28 ... shall not apply with respect to cases under Title 11 of the United States Code that are pending on the date of enactment of this Act, or to proceedings arising in or related to such

---

**2.** We note that the arguments raised by Gianakas in the present motion are distinct from those proposed in the earlier appeal, which involved the question of whether the bankruptcy judge had subject matter jurisdiction when a removal petition was filed with the bankruptcy clerk's office rather than with the district court clerk. We held that technical difference did not divest the bankruptcy judge of subject matter jurisdiction, *In re Gianakas,* 56 B.R. 747, 751 (N.D.Ill.1985), but that decision does not bar Gianakas from moving for abstention, since the Court can abstain from a dispute over which it has proper jurisdiction.

cases." 28 U.S.C. § 151 (Supp. III 1985) (Editorial Note Regarding Effective Date of Bankruptcy Act Amendments). Gianakas filed this bankruptcy petition in 1981, well before the July 10, 1984 enactment date of the Bankruptcy Amendments.

Discretionary abstention is governed by § 1334(c)(1) which provides that "[n]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1)(Supp. III 1985).

In determining whether to abstain under § 1334(c)(1), a district court should evaluate certain equitable considerations which implicate the concerns of the interest of justice and comity referred to in the statute. For example, the court should promote the avoidance of duplicative and uneconomical expenditure of judicial resources in different forums, minimize the possibility of inconsistent results in different forums and avoid addressing controversial or unsettled issues of state law. *See In re Baren*, 47 B.R. 39, 42–44 (Bankr.N.D.Ill.), *aff'd*, 48 B.R. 752 (1984). An additional concern is whether the proposed state litigation will have an effect on the bankruptcy estate. *In re Boughton*, 60 B.R. 373, 377 (N.D.Ill.1986).

The reasons for discretionary abstention in the present case are hardly compelling. Although the economic duress aspect of Gianakas' state complaint may involve issues of state law, there does not appear to be any controversy in the interpretation of this area of law which might weigh in favor of deferring to the expertise of a state tribunal in the interests of comity. *In re Boughton*, 49 B.R. 312, 316 (Bankr. N.D.Ill.1985), *aff'd*, 60 B.R. 373 (N.D.Ill. 1986). Furthermore, the state suit was filed on January 2, 1985, and was removed

before any significant progress was made in the litigation. This is extremely different from the situation, for example, where a case has been pending in state court for a lengthy period prior to removal. *Cf. Baren*, 47 B.R. at 43. Thus, there is presently little risk of duplicative or uneconomical expenditure of judicial resources.

Perhaps the most important factor in our decision is that the accounting elements of the state court complaint as well as issues raised in Exchange's counterclaims refer to attorneys' fees and interest questions which were specifically reserved for later resolution by the bankruptcy judge and may have an effect on the estate. In its April 22 order granting the abstention motion, the bankruptcy court noted that "[p]ursuant to an Agreed Order entered by this Court in May 1984, the issues of defendant's attorney fees and the method of interest computation on the loans to debtors were *deferred* in order to allow discussions between the parties to resolve the conflict." It is apparent from the present dispute that the parties' discussions were unfruitful, and that a serious controversy over these matters remains. In addition, many of Exchange's defenses to the allegations in the state complaint are tied in with the administration of the bankruptcy estate, and a state court unfamiliar with the underlying bankruptcy proceeding might not be the most efficient adjudicator of the dispute.

Finally, one additional factor which counsels against abstention is that a substantial delay in the ultimate resolution of matters in the bankruptcy court may result if a state court resolution must be awaited. *Boughton*, 60 B.R. at 377. Accordingly, under the ordinary standards for granting a discretionary abstention claim, Gianakas has not demonstrated a great need for this particular dispute to be heard in state court.[3]

---

3. Finally, we note that at least one judge in this district has held that the more stringent standards that apply in cases of mandatory abstention should be applied to discretionary abstention decisions even where the bankruptcy case was filed prior to July 10, 1984. *In re Sweeney*, 49 B.R. 1008, 1010–11 (N.D.Ill.1985). Thus, in a

case where the only basis for jurisdiction in the federal court is that a judgment in a purely state law case might become a claim or defense to a claim in a bankruptcy proceeding, abstention motions should be granted. *Id.* However, even if we applied this standard, we would not abstain in the present case because the matters of

In accordance with this opinion, we allow Gianakas' motion to withdraw the reference *nunc pro tunc* to March 3, 1986, and also allow Exchange's motion to vacate the April 22, 1986 order by Judge McCormick. Furthermore, we hereby deny Gianakas' motion for abstention and remand this case for consideration as an adversary proceeding by the bankruptcy judge. It is so ordered.

---

attorneys' fees and interest may directly affect the bankruptcy estate since these issues are directly related to the secured claim. Accordingly, we do not find that abstention would be appropriate or that it would be required under the standards of *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).