In re Walter ASCHER, Debtor.

**ALL AMERICAN LAUNDRY SERVICE,**
an Illinois corporation, Michael Brogan, Edward Long, and James Kelly, Plaintiffs,

v.

Walter ASCHER, and David E. Grochocinski, as Trustee for Walter Ascher, Defendants.

Bankruptcy No. 90 B 10559.
Adv. No. 90 A 0702.

United States Bankruptcy Court,
N.D. Illinois, E.D.

May 24, 1991.

Donald C. Shine, Christopher P. Koback, Nisen & Elliott, Chicago, Ill., for All American Laundry Service, Michael Brogan, Edward Long and James Kelly.

Zachary M. Bravos, Bravos & Trapp, Wheaton, Ill., for Walter Ascher.

L. Judson Todhunter, Holleb & Coff, Chicago, Ill., for trustee.

David E. Grochocinski, Grochocinski & Grochocinski, Ltd., Palos Hills, Ill., trustee.

## MEMORANDUM OPINION

JACK B. SCHMETTERER, Bankruptcy Judge.

Plaintiffs-counter-defendants, All American Laundry Service, Inc., Michael Brogan, Edward Long, and James Kelly ("Plaintiffs"), have moved the Court to abstain from hearing this Adversary Proceeding and to remand the case to the Circuit Court for the Eighteenth Judicial Circuit, DuPage County, Illinois, where it was originally filed. Defendants-counter-plaintiffs Walter Ascher ("Debtor") and Chapter 11 Trustee David E. Grochocinski ("Trustee") (collectively, the "Defendants") oppose the Motion, and in addition contend that the Court has core jurisdiction over this matter.

Following hearing, and having considered the argument of counsel and pleadings and materials filed, for reasons stated below Plaintiffs' Motion is denied.

## UNDISPUTED FACTS

On or about September 15, 1989, Plaintiffs filed their complaint against Debtor [1] in the Chancery Division of the Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois ("State Court"). Each Count in the complaint and the later amended complaint rests upon Plaintiffs' assertion that they are the constructive owners of 68.13% of the outstanding stock of All American Laundry Service, Inc. ("All American") [2] and certain real estate. Sometime in early September, 1989, Plaintiffs displaced Debtor and took control of All American based on their alleged ownership of the All American stock. Plaintiffs remain in possession and control of All American as of this date.

On or about September 25, 1989, Debtor filed a counterclaim against Plaintiffs ("Counterclaim") and moved for a temporary restraining order. The basis of the Counterclaim is Debtor's assertion that he is the owner of 100% of the outstanding stock of All American. Plaintiffs filed their amended complaint ("Amended Complaint") on or about January 4, 1990. The cause of action in State Court was entitled *All American Laundry Service, Inc., Michael Brogan, Edward Long, and James Kelly v. First State Bank of Harvard, as Trustee under Trust # 355, and Walter Ascher,* No. 89 CH 0627 ("Removed Case").

The Amended Complaint consists of seven counts against the Debtor relating to the ownership of All American and two other laundry operations. Plaintiffs essentially allege that through misrepresentations regarding promised ownership of the Laundry, Debtor induced Plaintiffs to invest substantial amounts of money which Debtor then used to purchase All American and two other laundry services owned by Debtor in Wisconsin and Florida. Plaintiffs request the following relief against Debtor in their Amended Complaint: 1) imposition of a constructive trust in all proceeds, profits, and any other assets obtained by Debtor through his operation of All American and the other laundry services; 2) imposition of a constructive trust in the underlying real estate owned by Debtor where All American operates its business; 3) an accounting regarding the transactions, profits, assets, and operations of All American and the other laundry businesses; 4) money and punitive damages for fraud, conversion, and breach of fiduciary duty against the Debtor; and, 5) an injunction against Debtor preventing him from conveying or otherwise dealing with the underlying real estate, assets or operations of All American or the other laundry businesses.

Debtor's three count Counterclaim ("Counterclaim") against Plaintiffs alleges that Plaintiffs wrongfully converted Debtor's ownership interest in All American and the other laundry businesses, and that Plaintiffs conspired to defraud Debtor of his property and interest in those businesses. Debtor requests the following relief: 1) an accounting of all transactions, profits, and operations of All American and the other laundry businesses as of the date

---

1. Plaintiffs also named First State Bank of Harvard, as trustee under Trustee No. 355, as a defendant in the Complaint.

2. Each individual Plaintiff alleges that he owns 22.71% of the Laundry.

Plaintiffs took over the businesses; 2) surrender of all corporate assets and control of the operation of All American and the other laundry businesses; 3) an injunction against Plaintiffs preventing them from operating or otherwise dealing with the assets and operations of All American and the other laundry businesses; and, 4) money and punitive damages for the conversion and harm caused by Plaintiffs' alleged wrongful takeover of All American and the other laundry operations.

Upon its filing in State Court, the Removed Case was originally assigned to Judge S. Bruce Scidmore. Upon Judge Scidmore's retirement in early 1990, the case was reassigned to Judge S. Keith Lewis. No hearings were held before Judge Lewis. Upon Plaintiffs' motion for change of venue, the case was reassigned to Judge Edward R. Duncan, who also held no hearings in the case, primarily because the bankruptcy stay took effect shortly after the reassignment. Judge Duncan has since been transferred from the Chancery Division.[3] Discovery did not progress greatly throughout the year the Removed Case was pending in State Court.

On June 8, 1990, Debtor filed a petition under Chapter 11 of the Bankruptcy Code. On August 3, 1990, Trustee was appointed in this Chapter 11 proceeding. On August 31, 1990, the Removed Case was removed to this Court pursuant to Trustee's application for removal. On November 29, 1990, this Court entered an Order authorizing the Trustee to intervene in the Removed Case as a party defendant and to adopt Debtor's Counterclaim. On December 20, 1990, Plaintiffs filed their answer to the Counterclaim. The Court has set a discovery cutoff date of June 1, 1991, and a pretrial date of June 13, 1991.

On January 15, 1991, Plaintiffs filed the present Motion arguing that this Court must abstain from hearing the Removed Case pursuant to 28 U.S.C. § 1334(c)(2) or in the alternative, should exercise its discretion to abstain under 28 U.S.C. § 1334(c)(1). At the Court's invitation, Plaintiffs also filed a Statement of Jurisdic-

tion in which they contend this Court lacks core jurisdiction over the Removed Case. In response, Trustee contends that Plaintiffs have not met the requirements of either Section 1334(c)(2) or Section 1334(c)(1). Trustee also argues that the substance of claims and counterclaims in the Removed Case involve a dispute over property of the estate which is central to the administration of the Chapter 11 case, and therefore is a core proceeding.

## DISCUSSION

### 1. *The Court has core jurisdiction over the Removed Case*

■ It is appropriate to consider this Court's jurisdiction before reaching the abstention issues. United States District Courts have subject matter jurisdiction over cases arising under, arising in, or related to proceedings under Title 11. 28 U.S.C. § 1334(a), (b). Each District Court is authorized to refer such proceedings to bankruptcy judges for the district. 28 U.S.C. § 157(a). The United States District Court for the Northern District of Illinois has made such referral pursuant to Local District Rule 2.33.

In a core proceeding that arises in or under Title 11, a bankruptcy judge has jurisdiction to hear and determine the proceeding and issue final orders and judgments. 28 U.S.C. § 157(b)(1). This Court finds that it has core jurisdiction over the Removed Case despite Plaintiffs' arguments to the contrary.

■ The underlying and controlling issue in the Removed Case is whether Debtor owns 100%, or a controlling majority, of the stock of All American and certain real estate upon which All American is located. In other words, resolution of each count in both the Amended Complaint and Counterclaim depends upon a judicial determination as to whether Plaintiffs or Debtor are the owners of the stock and real estate of All American. If Debtor prevails on his Counterclaim, such assets will become part of Debtor's estate and consequently will be

---

**3.** See Drenk Affidavit submitted by Defendants.

available for distribution to creditors. In addition, Debtor's estate might be entitled to damages should it be established that Plaintiffs wrongfully converted estate property. When a debtor and its creditors assert interests in property asserted to be part of the estate, the bankruptcy court has core jurisdiction to adjudicate all of those interests. *In re Chicago Cement Co.*, 1990 WL 168950 (N.D.Ill. Oct. 24, 1990) (in which the court determined it had core jurisdiction to determine the interests of a debtor who claimed it owned 51% of certain property, and of a creditor who claimed a 100% interest in the same property).

The *Chicago Cement* court used the tests set forth by the Seventh Circuit in *In re Xonics, Inc.*, 813 F.2d 127 (7th Cir.1987) to determine whether a dispute was core or non-core. The *Chicago Cement* court observed that the court in *Xonics* had found a dispute to be non-core because the debtor had abandoned its interest in the relevant property; thus, "[w]hen the disposition of the abandoned assets cannot possibly affect other creditors, there is no reason for the bankruptcy court's jurisdiction to linger." *Chicago Cement*, 1990 WL 168950, quoting *Xonics*, 813 F.2d at 132. The court in *Chicago Cement* concluded that unlike the debtor in *Xonics*, the debtor before it had not abandoned its interest in the disputed property, and therefore the proceeding was core pursuant to 28 U.S.C. § 157(b)(2)(A), (K), and (O).[4]

■ Plaintiffs argue that Trustee's claim that All American and the real estate may be assets of the estate is without merit because it is highly unlikely that Debtor will prevail on his Counterclaim. However, in reaching questions of jurisdiction and indeed of abstention, the Court's analysis does not reach the merits. Plaintiffs in effect argue that because it has not yet been determined that All American constitutes property of the estate, the Court lacks core jurisdiction. However, Section 541 of the Code provides that the property of an estate in bankruptcy includes all legal and equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C. § 541(a)(1). Furthermore, a determination of what is property of the estate and concurrently, of what is available for distribution to creditors of that estate, is precisely the type of proceeding over which the bankruptcy court has exclusive jurisdiction. *See In re Schraiber*, 97 B.R. 937 (Bankr.N.D.Ill.1989) and cases cited there (in which this Court determined it had core jurisdiction to determine whether a shopping mall was property of the estate).

■ Plaintiffs also contend that because the Court must apply state law in order to adjudicate the issues raised by the parties, the Removed Case is not a core proceeding. However, "a bankruptcy court has jurisdiction to determine whether disputed property is property of the estate" even if such dispute turns upon questions of state law. *Schraiber*, 97 B.R. at 942.

Should the Congress have intended Bankruptcy Courts to abstain from considering state law issues necessary to determination of cases within its jurisdiction, it would have enacted a far different set of laws. Indeed, analysis of state law issues to decide cases within our jurisdiction is an integral part of the daily work of the Bankruptcy Court. Were this Court to lack authority to decide such issues in cases and controversies otherwise within its jurisdiction, much of its work would grind to a halt so as to defer to litigation on crowded state court dockets. *Schraiber*, 97 B.R. at 940.

*See also N.S. Garrott & Sons*, 772 F.2d 462, 465–66 (8th Cir.1985) ("the nature and extent of the debtor's interest in property

---

**4.** Section 157(b)(2) provides in relevant part that core proceedings include, but are not limited to:

 (A) matters concerning the administration of the estate;

 (K) determination of the validity, extent, or priority of liens;

 (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims. 28 U.S.C. § 157(b)(2).

are determined by state law. Property rights under Section 541 are defined by state law. However, once that determination is made, federal bankruptcy law dictates to what extent that interest is property of the estate"); *see also Matter of Jones*, 768 F.2d 923, 927 (7th Cir.1985) ("Whether the debtor has an interest in property ... is not defined in the Code, and requires resort to non-bankruptcy law.... [G]enerally this means resort to state law....").

Thus, this Court has core jurisdiction to resolve the state law issues in the Removed Case since such resolution will determine whether Debtor has an interest in property which, if such interest is found, will become property of the estate. 28 U.S.C. § 157(b)(2)(A), (K), (O). If the state law issues are resolved in favor of Debtor, such resolution will have a direct impact upon the administration of the estate, especially if there are no other major assets in the estate available for distribution to creditors.

### 2. *Mandatory Abstention*

 Plaintiffs have moved this Court to abstain from any further hearing in the Removed Case pursuant to 28 U.S.C. § 1334(c)(2) or in the alternative, 28 U.S.C. § 1334(c)(1). Mandatory abstention is addressed in Section 1334(c)(2), which provides in part:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely

adjudicated, in a state forum of appropriate jurisdiction. 28 U.S.C. § 1334(c)(2). As the quoted language indicates, if the following four requirements are satisfied, a court, upon timely motion, must abstain: (1) the case is based on a state law claim or cause of action that, although related to a case under Title 11, does not arise under Title 11 or arise under a case under Title 11; (2) there is no independent basis for federal jurisdiction for the claim other than the bankruptcy proceeding; (3) an action has been commenced in a state forum; and, (4) the case could be timely adjudicated in state court. *Bates & Rogers Constr. Corp. v. Continental Bank, N.A.,* 97 B.R. 905, 907 (N.D.Ill.1989). If a motion to abstain is disputed, movant has the burden of proof on the existence of these elements. *In re Coan,* 95 B.R. 87, 89 (Bankr.N.D.Ill. 1988).

Because the Removed Case constitutes a core proceeding, it is not under related jurisdiction and therefore fails to meet the first requirement for mandatory abstention under Section 1334(c)(2). Furthermore, even if this were a related proceeding, all other requirements necessary for mandatory abstention are not met. Most importantly, for reasons discussed in part 3 of this opinion, this case cannot be timely adjudicated in state court. Timely adjudication is not only a requirement for mandatory abstention; it is also a factor which is weighed heavily in determining whether to exercise the discretion to abstain under 28 U.S.C. § 1334(c)(1). *See In re Williams,* 88 B.R. 187, 191 (Bankr.N.D.Ill.1988) (Ginsberg, J.) ("[t]he court recognizes that delay is a relevant factor in determining whether or not to abstain").

 Because the requirements for mandatory abstention have not been met, this Court need not abstain from hearing the Removed Case pursuant to Section 1334(c)(2).[5]

---

**5.** Contrary to Trustee's contention, Plaintiffs filed the present Motion in a timely manner. In *In re Novak,* 116 B.R. 626, 628 (N.D.Ill.1990), the court construed the term "timely" in Section 1334(c)(2) by finding that a party acts in a timely fashion "when he or she moves as soon as possible after he or she should have learned

the grounds for such a motion." Plaintiffs here filed the abstention Motion a mere eleven days after both parties had filed statements of jurisdiction in which the respective parties argued as to whether the Court had core jurisdiction over the Removed Case. In addition, the Court

### 3. *Discretionary Abstention*

Permissive or discretionary abstention is addressed in 28 U.S.C. § 1334(c)(1) which provides:

Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

■ In contrast to mandatory abstention under 28 U.S.C. § 1334(c)(2), discretionary abstention applies to both core and non-core matters. 1 Collier On Bankruptcy, ¶ 3.01[3][a] at 3–68 (15th ed.1989).

■ Authority in this District properly holds that the discretionary abstention provision allows the Bankruptcy Court to render a final decision to abstain. *In re Pankau*, 65 B.R. 204, 209 n. 6 (Bankr.N.D.Ill. 1986) (Ginsberg, J.). *Pankau* found that the mandatory abstention provision then contained a limitation on appealability of an order to abstain, which thus gave rise to a question as to whether an Article I bankruptcy judge could constitutionally enter a final but nonappealable order. However, there is no similar limitation on appeal from an order for discretionary abstention under 28 U.S.C. § 1334(c)(1). *Id.; see also In re Williams*, 88 B.R. 187, 188 n. 2 (Bankr.N.D.Ill.1988) (Ginsberg, J.). Thus, the court in *Pankau* and *Williams* questioned the validity of Bankruptcy Rule 5011(b),[6] and found it to be in direct conflict with 28 U.S.C. § 1334(c)(1). *Id.* This Court concurs with *Pankau* and *Williams* and finds, in the absence of any statutory limitation on appeals of such orders, that a bankruptcy judge's order with regard to discretionary abstention is a final order.

■ Presently, moreover, a bankruptcy judge's order with regard to mandatory abstention under 28 U.S.C. § 1334(c)(2) is also a final order. At the time of *Pankau* and *Williams*, Section 1334(c)(2) read as follows:

... Any decision to abstain made under this subsection is not reviewable *by appeal or otherwise* .... 28 U.S.C. § 1334(c)(2).

Thus, Section 1334(c)(2) provided a limitation on appeals of mandatory abstention orders, which prevented a bankruptcy judge, as an Article I judge, from constitutionally entering a final nonappealable order.

However, Section 1334(c)(2) was recently amended as follows:

Any decision to abstain or not to abstain made under this subsection is not reviewable *by appeal or otherwise by the court of appeals under section 158(d)* .... 28 U.S.C. § 1334(c)(2).

By providing that mandatory abstention orders are not reviewable specifically by the Court of Appeals, Congress clearly intended the limitation on appeals from mandatory abstention orders applies only to orders of the District Court. Therefore, there is no limitation on appeals to the District Court from mandatory abstention orders issued by a bankruptcy judge. There being no longer a constitutional impediment in Section 1334(c)(2), the order of this Court with regard to mandatory abstention is also a final order. However, should a higher court determine that this Court cannot render a final decision with regard to either mandatory or permissive abstention, this Memorandum Opinion stands as a recommendation to the District Court for denial of the Motion for Abstention.

■ Courts have looked to and balanced many factors in determining whether abstention is appropriate under Section

---

granted the parties additional time to adequately plead jurisdiction.

**6.** Bankruptcy Rule 5011(b) provides:
Unless a district judge orders otherwise, a motion for abstention pursuant to 28 U.S.C. § 1334(c) shall be heard by the bankruptcy

judge, who shall file a report and recommendation for disposition of the motion.... Review of the report and recommendation by the district court shall be governed by Rule 9033. Bankr. Rule 5011(b).

1334(c)(1), including: (1) the effect or lack thereof on efficient administration of the estate, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of applicable state law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than the form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of the bankruptcy court's docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, and (11) the presence of nondebtor parties. *In re Republic Reader's Service, Inc.*, 81 B.R. 422, 429 (Bankr.S.D.Tex.1987). It should be remembered that abstention is "an extraordinary and narrow exception to the federal court's duty to adjudicate a controversy properly before it." *In re Chateaugay Corp.*, 1990 Bankr. Lexis 1499 (Bankr.S.D. N.Y.1990).

First, this matter could not be timely adjudicated in State Court. Indeed, that resolution of the matter in State Court would cause a delay in the administration of this estate. "Where there is a conflict between a bankruptcy court administering a complex reorganization and other court proceedings, equity favors the unfettered authority of the bankruptcy court to proceed expeditiously and without the time-consuming and costly distraction of other litigation." *Chateaugay*, 1990 Bankr. Lexis 1499. Before its removal to this Court, the Removed Case remained in state court for one year, and came before three different judges without any significant discovery or hearing taking place. Although the delay in State Court was at least partially attributable to delay tactics in response to discovery efforts, the proceeding did not otherwise progress while pending in the local court. Moreover, if the case were sent back to State Court, it would be assigned to yet another judge who would be unfamiliar with the case since Judge Duncan no longer sits in the Chancery Division.[7] In contrast, discovery in this Court should be concluded very shortly. The Court has set a discovery cutoff date of June 1, 1991, and a pretrial date of June 13, 1991. In other words, the Removed Case is much further down the road to resolution here than when it was pending in State Court. *See In re Williams*, 88 B.R. 187, 190 (Bankr.N.D.Ill.1988) ("Considerations of judicial economy strongly suggest that the ... proceeding ... that is much further down the road to resolution ... takes precedence...."). In addition, because the case was removed from State Court before any significant progress was made in the litigation, there is little risk of duplicative or uneconomical expenditure of judicial resources. *See In re Gianakas*, 75 B.R. 272, 275 (N.D.Ill.1986).

Given the history of this proceeding in State Court, it appears that the estate will be ready for administration well before a trial on the merits in State Court would occur. Because administration of the estate can take place only after the Removed Case is resolved, "a substantial likelihood exists that the estate and its creditors [would] suffer a lengthy and prejudicial delay." *See J.D. Marshall Internatl., Inc. v. Redstart*, 74 B.R. 651, 656 (N.D.Ill.1987). This likelihood becomes even greater if the Laundry and real estate are potentially the only significant assets of the Debtor available for distribution, as presently seems to be so.[8]

---

7. See Drenk Affidavit.

8. Debtor filed this case under Chapter 11 of the Bankruptcy Code. Where a Chapter 11 reorganization is pending, "the court must be sensitive to the needs of the debtor attempting to reorganize." *In re World Solar Corp.*, 81 B.R. 603, 612 (Bankr.S.D.Cal.1988). Significant delays in resolving claims such as Debtor's Counterclaim, which might substantially enhance the viability

Another factor significant in determining whether to permissively abstain is whether a state court proceeding will have an effect upon the estate. In *Marshall*, the court observed that if a state court proceeding will have no effect on the estate, abstention is proper; however, where the proceeding will affect the amount or existence of creditors' dividends, abstention is inappropriate. *Marshall*, 74 B.R. at 656. *See also In re Boughton*, 49 B.R. 312, 319 (Bankr.N.D.Ill. 1985) (that because the outcome of an adversary proceeding would determine whether the creditors would receive any dividend from the estate, it was proper for the court to exercise its discretion to abstain). As discussed previously, the outcome of the Removed Case will have a definite impact upon the estate and its creditors. Obviously if Debtor prevails on its Counterclaim, creditors will receive a significantly larger distribution than if Plaintiffs prevail on their Complaint. On the other hand, abstention from the Removed Case would only "impede or disrupt the bankruptcy court's exclusive and nondelegable control over the administration of the estate within its possession." *Republic*, 81 B.R. at 426.

Plaintiffs' main point of contention in favor of abstention is that the Removed Case involves only issues of state law which the State Court should decide. However, the mere presence of state law issues is not enough to warrant abstention since "virtually every issue which arises within the context of a bankruptcy case involves state law to at least some degree." *Republic*, 81 B.R. at 427. The factor which courts weigh heavily in determining whether to allow permissive abstention is whether a party can direct the court to any "unsettled or particularly difficult or complex issues of state law which ... might be

better addressed by the state court." *In re U.S. Aviex Co., Inc.*, 96 B.R. 874, 882 (N.D. Ind.1989). In particular, courts have found that abstention is best where there are novel or unsettled questions of state law to be decided. *See In re Williams*, 88 B.R. 187, 191 (Bankr.N.D.Ill.1988); *In re Wells Properties, Inc.*, 102 B.R. 685, 692 (Bankr. N.D.Ill.1989) (Wedoff, J.) ("Courts have abstained ... in proceedings that raised novel or unsettled issues of state law, without raising significant issues of bankruptcy law....").

Plaintiffs do not allege any novel or unsettled issues of state law that would be more appropriately decided by an Illinois court. Indeed, the Court is unaware of any lack of judicial precedent or the existence of unsettled legal issue with regard to interpreting the issue of who owns the stock of All American. *See Gianakas*, 75 B.R. at 275; *Williams*, 88 B.R. at 191. Plaintiffs instead argue in a conclusory fashion that the Removed Case involves difficult issues of state law regarding imposition of a constructive trust and constructive ownership of corporate stock and assets. However, such issues are not novel in bankruptcy cases, and the state law issues presented are not unusually difficult or complex, let alone unsettled.

In *In re Chicago, Milwaukee, St. Paul and Pacific Railroad Co.*, 654 F.2d 1218, 1221 (7th Cir.1981), the Seventh Circuit reasoned that a bankruptcy court is qualified to decide a suit where "no more uncertainty attends [its] disposition than is present in the decision of most legal questions ... or where the law bearing on the same question in other contexts is reasonably

of the estate, may hamper reorganization efforts. *Id.* Thus, timely adjudication "weighs heavily for a Chapter 11 debtor." *Id.* *See also In re Titan Energy, Inc.*, 837 F.2d 325, 330 (8th Cir.1988) (in which the court concluded that aiding a debtor's reorganization effort was a strong reason for exerting jurisdiction over a

debtor's insurance policy, and that such reason was absent since the debtor at issue was in a Chapter 7 liquidation). Since a Chapter 11 Trustee has been appointed and revival of the business appears questionable here, this factor appears to be of small if any weight in the instant case.

**648**

clear...." *Chicago*, 654 F.2d at 1222, quoting in part *In re Chicago & Northwestern Ry. Co.*, 127 F.2d 1001, 1004 (7th Cir.1942) (in which the court observed that "to refer to the state court every land question arising in bankruptcy would be to [increase the costs of litigation and disregard the very objectives of summary jurisdiction granted to the bankruptcy court"). Similarly, resolution of state law issues here is not connected with any more uncertainty than attends the decision of most legal questions.

Plaintiffs have failed to meet their burden in demonstrating that the issues in the Removed Case would be better addressed by a State Court. Indeed, several factors strongly indicate that permissive abstention would be inappropriate here. Abstention would serve only to hinder a swift and efficient resolution of the Removed Case, a resolution which is clearly of much importance to the creditors of the estate. Therefore, the Removed Case should proceed in this Court.

## CONCLUSION

Accordingly, by separate order Plaintiffs' Motion for Abstention pursuant to 28 U.S.C. § 1334(c)(2) or in the alternative 28 U.S.C. § 1334(c)(1), is denied. Should this Court lack authority to make this decision, this opinion will stand as a recommendation to the District Court to deny both mandatory and permissive abstention.