UNITED STATES of America

v.

LTV CORPORATION, et al.

Wheeling-Pittsburgh Steel Corp.,
Appellant.

No. 84–5625.

United States Court of Appeals,
District of Columbia Circuit.

Oct. 16, 1984.

Edward T. Hand, Atty., U.S. Dept. of Justice, and Robert B. Nicholson, Atty., U.S. Dept. of Justice, Washington, D.C., were on the motion to dismiss for appellee U.S. of America.

Milton Handler, New York City, was on the motion to dismiss for appellees The LTV Corp., et al.

John R. Ferguson, Joe W. Fleming, II, Washington, D.C., and George Raynovich, Jr., Pittsburgh, Pa., of counsel, were on appellant Wheeling-Pittsburgh Steel Corp.'s opposition to the motions to dismiss.

ON MOTIONS TO DISMISS

Before WALD and STARR, Circuit Judges, and McGOWAN, Senior Circuit Judge.

Opinion PER CURIAM.

PER CURIAM:

The LTV Corporation ("LTV") and Republic Steel Corporation ("Republic") announced plans for a merger in September of 1983 whereby LTV would acquire all the assets of Republic. In February 1984, the Justice Department, having concluded an investigation of the proposed merger, indicated that it would seek to have the transaction enjoined as violative of the federal antitrust laws. The two companies and the Justice Department then entered into negotiations, the upshot of which was that LTV and Republic agreed to modify the transaction to avoid the Department's antitrust concerns. In accordance with the negotiated settlement, on March 21, 1984, the United States filed in United States District Court for the District of Columbia both a civil antitrust complaint challenging the acquisition of Republic by LTV as a violation of Section 7 of the Clayton Act, 15 U.S.C. § 18, and a proposed consent decree.[1] Notice of the proposed settlement was issued in compliance with the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16(b)–(h) ("APPA") ("the Tunney Act").[2]

During the ensuing months, several companies participated in APPA proceedings designed to elicit comments on the proposed settlement. Appellant Wheeling-Pittsburgh Steel Corporation ("Wheeling") moved to participate in those proceedings. In particular, Wheeling sought to examine government materials with respect to the Justice Department's change in position as to the legality of the merger. The district court permitted Wheeling to participate in the proceedings, but denied Wheeling's request to compel discovery from the United States. Wheeling did not appeal this ruling. In expressing its interest in participating in the APPA proceedings, Wheeling clearly indicated to the district court that it did not intend to move for status as an intervenor under Fed.R.Civ.P. 24.[3]

---

1. The proposed consent decree required LTV to divest its entire interest in Republic's steel mills in Gadsden, Alabama and Massillon, Ohio. If LTV could not accomplish the required divestiture by December 1, 1984, the proposed decree provided that, upon application by the government, the district court would appoint a trustee to sell the two steel mills for operation as going concerns.

2. The APPA was adopted in the wake of concerns that government consent decrees had been entered in secrecy and without adequate attention to the public interest. The twin goals of the Act have been described as "[f]irst, that the courts would be able to obtain the requisite information enabling them to make an independent determination, and second, that the consent decree process would be preserved as a viable settlement option." *United States v. Central Contracting Co.*, 527 F.Supp. 1101, 1103 (E.D.Va.1981) (citing legislative materials). For a description of the operation of the Act, see generally Note, *The Scope of Judicial Review of Consent Decrees Under the Antitrust Procedures and Penalties Act of 1974*, 82 Mich.L.Rev. 153, 155–57 (1983).

3. See Motion of Wheeling-Pittsburgh Steel Corporation to Participate in Proceedings and to Compel Compliance with the Antitrust Procedures and Penalties Act at 3 (April 6, 1984) ("Wheeling does not seek the status of an intervenor under the Federal Rules of Civil Procedures, nor is this a request to participate as an *amicus curiae*."); Transcript of hearing of May 1, 1984, at 11 ("THE COURT: Are you petition-

On August 2, 1984, the district court issued a memorandum opinion which concluded that entry of the proposed final judgment was in the public interest, and the court accordingly entered final judgment approving the merger.[4] Wheeling did not, however, move to intervene for purposes of appeal from the judgment. Instead, Wheeling filed a notice of appeal from the judgment on August 31, 1984. The United States and LTV now move to dismiss Wheeling's appeal on the ground that Wheeling was not a party to the proceedings below. We hold that, because Wheeling never sought to and did not become a party below, its appeal must be dismissed.

■ "It has long been settled that one who is not a party to a record and judgment is not entitled to appeal therefrom." *United States v. Seigel*, 168 F.2d 143, 144 (D.C.Cir.1984). *See United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1290 (D.C. Cir.1980) (citing rule); *Moten v. Bricklayers, Masons & Plasterers*, 543 F.2d 224, 227 (D.C.Cir.1976) (same); *see also* Fed.R. App.P. 3(c) ("The notice of appeal shall specify the *party* or *parties* taking the appeal . . . .") (emphasis added). Parties to the record include the original parties and those who have become parties by intervention, substitution, or third-party practice. 9 Moore's *Federal Practice* ¶ 203.06 at 3–20 (1980). In this case, Wheeling's only avenue for becoming a party in the district court was by intervention.

■ Wheeling did not automatically acquire party status simply by being permitted to comment on the proposed final judgment or by filing its notice of appeal. In *Moten v. Bricklayers, Masons & Plasterers*, 543 F.2d 224 (D.C.Cir.1976), for example, a black local union brought suit, alleging discrimination by a white local and an international union. An employers' association appeared at hearings on a proposed settlement of the suit, but never sought to become a party. *See id.* at 227. Because the association had not sought intervention as a party, this court held that "they stand in a relationship analogous to that of an amicus curiae . . . . As amicus curiae may not appeal from a final judgment, the appeal . . . must be dismissed for want of jurisdiction." *Id.*

Wheeling does not contend that it ever became a party to the government antitrust lawsuit. Nor does Wheeling dispute the general rule that an appellant must be a party to the proceedings in order to file an appeal. Rather, Wheeling asserts that this general rule contains numerous exceptions, and requires only that the appellant be privy to the record and be aggrieved by the order appealed from. Wheeling also contends that in any event the APPA changes the operation of the rule against nonparty appeals in cases to which that Act applies.

There are indeed exceptions to the general rule but none is relevant to this appeal. The examples Wheeling cites involve appeals from orders which effectively bound a non-party despite its lack of party status in the trial court.[5] The final judgment in

---

ing to intervene? MR. FERGUSON [counsel for Wheeling]: No sir, we are not.").

4. *United States v. LTV Corp.*, 1984 Trade Cas. (CCH) ¶ 66,133 (D.D.C.1984) (Pratt, J.).

5. Wheeling relies on two types of cases. The first involved non-party appeals from consent judgments and other final judgments in shareholder's derivative suits and class actions. *See, e.g., Tryforos v. Icarian Dev. Co.*, 518 F.2d 1258 (7th Cir.1975), *cert. denied*, 423 U.S. 1091, 96 S.Ct. 887, 47 L.Ed.2d 103 (1976); *Research Corp. v. Asgrow Seed Co.*, 425 F.2d 1059 (7th Cir.1970); *Cohen v. Young*, 127 F.2d 721 (6th Cir.1942). However, judgments in such cases bind shareholders and non-party class members who have

received notice of the pendency of the actions. *See, e.g., Nathan v. Rowan*, 651 F.2d 1223, 1226 (6th Cir.1981); *Fowler v. Birmingham News Co.*, 608 F.2d 1055, 1058 (5th Cir.1979). In *Research Corp., supra*, for example, the court noted that, because judgments rendered in class actions bind non-party class members "[i]f a class member intervenes or even appears in response to a notice . . . and objects to the dismissal or compromise, he has a right to appeal. . . ." 425 F.2d at 1060 (citations omitted).

The other set of cases Wheeling relies upon involved collateral disputes which arose subsequent to the entry of an antitrust decree. *See, e.g., United States v. ASCAP*, 442 F.2d 601 (2d Cir.1971) (appeal by non-party to original judg-

this case, however, does not foreclose other means of challenging the proposed merger, such as a private antitrust suit. Moreover, Wheeling points to no examples of non-parties permitted to appeal from the entry of a consent judgment under the Tunney Act.

More generally, Wheeling cites a leading treatise for the proposition that the rule requiring an appellant to be a party to the proceedings below is not formalistic, but functional, requiring only that the appellant be "privy to the record" and be "aggrieved by the order appealed from." 9 Moore's *Federal Practice* ¶ 203.06 at 3–20 (1980). This comment, however, in context relates to the exceptions just discussed.[6] Moreover, even on a functional analysis, the general rule against non-party appeals serves a useful purpose in cases like this. Under the rule, those who object to the entry of a consent judgment must seek to

intervene in the proceedings (either before or after entry of the judgment) as a condition of taking an appeal. To gain status as an intervenor, the would-be appellant must first establish that participation by the intervenor would aid the court in making its public interest determination under the APPA.[7] Courts of appeals may, of course, review district court orders on intervention in such cases under an abuse of discretion standard.[8] Under this procedure, the responsibility for determining when intervention by one who objects to the entry of a consent judgment should be permitted falls, as it should, to the trial court in the first instance.[9]

The language and the legislative history of the APPA do not alter our view. Nothing in the language of the Act indicates that Congress intended to change the general rule.[10] Indeed, the procedure authoriz-

---

ment from injunction against prosecution of collateral challenge to original judgment); *United States v. United Fruit Co.,* 410 F.2d 553 (5th Cir.) (appeal by non-party to original judgment from order sealing documents discovered in course of original proceedings), *cert. denied,* 396 U.S. 820, 90 S.Ct. 59, 24 L.Ed.2d 71 (1969). The appellants in these cases were also effectively bound by the original judgment.

Finally, Wheeling cites *Matter of Penn Cent. Transp. Co.,* 596 F.2d 1155 (3d Cir.), *cert. denied,* 444 U.S. 835, 100 S.Ct. 68, 62 L.Ed.2d 45 (1979). That case, a bankruptcy proceeding, referred to an exception to the requirement of party status: "Failure to seek intervenor status would not, however, be fatal to this appeal if appellants had a right to be heard in the proceedings below." *Id.* at 1160. The court, however, was speaking of persons who have the right to be heard precisely because they are essential parties to the bankruptcy proceedings. *Id.* at 1159 (citing 11 U.S.C. § 205(c)(13)) ("The debtor, any creditor or stockholder, ... shall have the right to be heard on all questions arising in the proceedings....").

6. See cases discussed *supra* at note 5. Moore's treatise cites other exceptions to the general rule.

7. *See e.g., United States v. Hartford-Empire Co.,* 573 F.2d 1, 2 (6th Cir.1978) ("A private party generally will not be permitted to intervene in government antitrust litigation absent some strong showing that the government is not vigorously and faithfully representing the public interest."); *accord, United States v. Associated Milk Producers, Inc.,* 534 F.2d 113 (8th Cir.), *cert. denied,* 429 U.S. 940, 97 S.Ct. 355, 50

L.Ed.2d 309 (1976); *United States v. G. Heileman Brewing Co.,* 563 F.Supp. 642, 649 (D.Del. 1983); *United States v. The Stroh Brewing Co.,* 1982–2 Trade Cas. (CCH) ¶ 64,804 at 71,960 (D.D.C. June 4, 1982).

8. *See e.g., United States v. Am. Cyanamid Co.,* 719 F.2d 558, 563 (2d Cir.1983) (indicating that district court decision whether leave to intervene permissively should be granted can only be overturned if it constitutes abuse of discretion), *cert. denied,* —— U.S. ——, 104 S.Ct. 1596, 80 L.Ed.2d 127 (1984); *United States v. Am. Tel. & Tel. Co.,* 642 F.2d 1285, 1290 (D.C.Cir.1980) (same).

9. This procedure will not, as Wheeling suggests, foreclose all appellate review of antitrust consent judgments. Objectors to a consent judgment may seek to intervene in the proceedings for the limited purpose of appeal. *See e.g., United States v. Western Elec. Co., Inc.,* 578 F.Supp. 677, 678 (D.D.C.1983); *United States v. Am. Tel. & Tel. Co.,* 552 F.Supp. 131 (D.D.C. 1982), *aff'd sub nom. Maryland v. United States,* 460 U.S. 1001, 103 S.Ct. 1240, 75 L.Ed.2d 472 (1983) (summary affirmance).

10. The Act provides, in relevant part, 15 U.S.C. § 16(f):

[T]he court may ... authorize full or limited participation in proceedings before the court by interested persons or agencies, including appearances amicus curiae, intervention as a party pursuant to the Federal Rules of Civil Procedure, examination of witnesses or documentary materials, or participation in any

ed by the Act, which grants the district courts discretion in determining who may intervene in proceedings under the Act, is entirely consistent with the general rule under the Federal Rules of Civil Procedure. Moreover, given that an important purpose of the Act was to preserve the consent judgment as a method of resolving government antitrust cases,[11] it would be anomalous to conclude that Congress intended to permit persons who had not even attempted to intervene in the proceedings to appeal, and thereby disrupt, the entry of a final consent judgment.

Finally, Wheeling suggests that the court should apply any adverse ruling in this case prospectively, inasmuch as, in Wheeling's view, it had no basis on which to anticipate this result. Yet Wheeling does not dispute that the general rule requires it first to seek to become a party to the proceedings before taking an appeal. Nor does Wheeling cite any precedent in this or any other court recognizing an exception from the general rule in APPA cases.[12] Moreover, Wheeling was given an opportunity to seek to intervene in the proceedings below, an offer which it specifically declined.[13] These circumstances do not justify disregarding the general principle that prospective applications of rules are only rarely granted.[14]

For these reasons, it is ORDERED by the court that the appeal of Wheeling-Pittsburgh Steel Corporation is dismissed.

---

other manner and extent which serves the public interest as the court may deem appropriate.

**11.** See *supra* note 2.

**12.** The district court in *United States v. Am. Tel. & Tel. Co.,* 552 F.Supp. 131 (D.D.C.1982), *aff'd sub nom. Maryland v. United States,* 460 U.S. 1001, 103 S.Ct. 1240, 75 L.Ed.2d 472 (1983) (summary affirmance) followed the intervention procedure in an APPA case, allowing those who objected to a consent decree to become parties for the limited purposes of an appeal. Moreover, in the district court in this case, an-

---

other participant in the comment proceedings, Cyclops Corporation, unsuccessfully sought intervention for purposes of taking an appeal.

**13.** See *supra* note 3.

**14.** See *Railroad Yardmasters of America v. Harris,* 721 F.2d 1332, 1347 (D.C.Cir.1983) (Wald, J., dissenting) ("Even when a court applies a new rule of law prospectively only, it generally applies the rule to the case before it.") (citing cases); *Johnson v. Lehman,* 679 F.2d 918, 920 (D.C.Cir.1982) (prospective applications of rules reserved for instances of "manifest injustice") (citing cases).