**MASSACHUSETTS SCHOOL OF LAW AT ANDOVER, INC., Proposed Intervenor, Plaintiff–Appellant**

v.

**UNITED STATES of America, Plaintiff–Appellee**

**American Bar Association, Defendant–Appellee.**

No. 96–5247.

United States Court of Appeals, District of Columbia Circuit.

Argued May 8, 1997.

Decided July 15, 1997.

---

Lawrence R. Velvel, Washington, DC, argued the cause and filed the brief for appellant.

David Seidman, Attorney, U.S. Department of Justice, Washington, DC, argued the cause for appellee United States of America. With him on the brief were Joel I. Klein, Acting Assistant Attorney General, A. Douglas Melamed, Deputy Assistant Attorney

General, and Catherine G. O'Sullivan, Attorney.

Roger E. Warin, Washington, DC, argued the cause for appellee American Bar Association. With him on the brief were David L. Roll and David R. Stewart.

Before WALD, WILLIAMS and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.

Opinion concurring in the judgment filed by Circuit Judge WALD.

STEPHEN F. WILLIAMS, Circuit Judge:

On June 27, 1995 the Department of Justice filed a complaint in district court here against the American Bar Association, alleging that through its control of law school accreditation the ABA had violated § 1 of the Sherman Act by, among other things, fixing law school faculty salaries. Simultaneously, the Department filed a proposed consent decree prohibiting certain conduct and ordering structural changes in the ABA Section on Legal Education. Following the procedure for the entry of consent judgments prescribed by the Tunney Act, 15 U.S.C. § 16(b)-(d)(1994), the Department filed a competitive impact statement with the district court and then published both the statement and the proposed consent judgment in the Federal Register for public comment. Nearly a year later, after several modifications had been made, the district court found the proposed settlement to be in the public interest, see *id.* § 16(e), and entered judgment.

The Massachusetts School of Law at Andover ("MSL" or the "School") is a state-accredited law school that has unsuccessfully sought ABA accreditation. In November 1993 it filed a private antitrust action against the ABA in the Eastern District of Pennsylvania, alleging many of the same anticompetitive practices that the Department later charged the ABA with here. It lost in the trial court and (after this case was argued) on appeal. See *Massachusetts School of Law at Andover v. ABA*, 107 F.3d 1026 (3d Cir.1997).

Before the district court here MSL objected to the proposed settlement agreement on the grounds that it should go further in remedying the alleged antitrust violations and should contain a more effective enforcement mechanism. MSL also claimed that the Department had failed to, and should be required to, file documents that were "determinative in formulating [the proposed consent judgment]," 15 U.S.C. § 16(b), and that approval of the judgment should be conditioned upon disclosure of information acquired in the course of the Department's investigation.

MSL used a number of channels to advance its position. It submitted written comments in response to the Federal Register publication, as provided for by 15 U.S.C. § 16(d). It moved to intervene in the district court proceedings, and in the alternative to participate as *amicus curiae*. And on entry of judgment, it sought to intervene in the district court for purposes of appeal. The court granted *amicus* status but denied both intervention motions. MSL now appeals from the denial of its motion for intervention for purposes of appeal and from entry of the consent judgment. We affirm the denial of intervention for purposes of appeal, except with respect to the disclosure issue. On the merits of the latter, we find that the district court properly rejected the School's claim that evidentiary material from the Department's investigation should be made public.

\* \* \*

The Tunney Act provides that before a settlement agreement between the Department and a party charged with violating the antitrust laws can take effect, "the court shall determine that the entry of such judgment is in the public interest." 15 U.S.C. § 16(e). The court may employ a wide variety of techniques in gathering information about the proposed judgment and coming to a decision, one of which is to allow intervention by interested parties:

> [T]he court may ... authorize full or limited participation in proceedings before the court by interested persons or agencies, including appearance amicus curiae, intervention as a party pursuant to the Federal

Rules of Civil Procedure, examination of witnesses or documentary materials, or participation in any other manner and extent which serves the public interest as the court may deem appropriate.

*Id.* § 16(f)(3).

■ The Act directs us to look to the Federal Rules of Civil Procedure for the legal standard governing intervention. MSL suggests, however, that those rules have no application where intervention is sought solely for purposes of filing an appeal. It notes that 15 U.S.C. § 16(f)(3) speaks of "participation in proceedings before the court," but that, if the district court grants intervention solely for purposes of appeal, no participation whatsoever in the district court will result (disregarding, of course, whatever might occur in the event of a reversal). But even if MSL were right on the narrow issue of 15 U.S.C. § 16(f)(3), that would do no more than remove that provision from consideration, at which point we would go right back to the Federal Rules of Civil Procedure. Although those rules nominally apply only to "procedure in the United States district courts," Fed.R.Civ.P. 1, we apply them—specifically Rule 24—to interventions solely for purposes of appeal. *Smuck v. Hobson,* 408 F.2d 175, 176–82 (D.C.Cir.1969); see also *United Airlines v. McDonald,* 432 U.S. 385, 390, 97 S.Ct. 2464, 2467–68, 53 L.Ed.2d 423 (1977) (upholding, against claim that attempted intervention was untimely, circuit court decision treating intervention for purposes of appeal as governed by Rule 24).[1] In addition, the Supreme Court has observed that the Rules' "policies underlying intervention may be applicable in appellate courts," *International Union v. Scofield,* 382 U.S. 205, 217 n. 10, 86 S.Ct. 373, 381 n. 10, 15 L.Ed.2d 272 (1965), and we have held that intervention *in* the court of appeals is governed by the same standards as in the district court, *Building & Construction Trades Dept. v. Reich,* 40 F.3d 1275, 1282–83 (D.C.Cir.1994).

The parties have assumed that we review the district court's application of Rule 24 for abuse of discretion. Indeed, that is what we said with respect to intervention in proceedings before the district court in *Building & Construction Trades Dept.,* 40 F.3d at 1282. Although in this case the scope of review makes no difference because of our agreement with the district court, it deserves a brief detour to note some complications.

While in *Building & Construction Trades Dept.* we did not explicitly distinguish between intervention of right and permissive intervention, other courts and even this court have done so in the past. See *Edwards v. Houston,* 78 F.3d 983, 995 (5th Cir.1996) (en banc); *Foster v. Gueory,* 655 F.2d 1319, 1324 (D.C.Cir.1981); *Hodgson v. United Mine Workers of America,* 473 F.2d 118, 127 n. 40 (D.C.Cir.1972). Yet, except as intervention as of right may be likely to involve more pure issues of law, which would be reviewed *de novo,* cf. *Air Line Pilots Ass'n Int'l v. Eastern Air Lines, Inc.,* 863 F.2d 891, 894–95 (D.C.Cir.1988) (explaining that although formula for review of preliminary injunction is abuse of discretion, issues of law are reviewed *de novo*), it is not apparent that that distinction should be important. It would seem that it is only at the level of the particular issue (or subissue) that one can make sensible distinctions. Thus, in *Hodgson v. United Mine Workers,* 473 F.2d 118, 125 n. 26 (D.C.Cir.1972), we noted the existence of district court discretion over the timeliness and adequacy of representation issues under Rule 24(a)(2), and over Rule 24(b)(2) determinations generally.

On the other hand, so far as intervention solely for purposes of appeal is concerned, we note that the effect of a decision on such intervention will often be indistinguishable from the effect of a decision on a motion to intervene in an appeal in the court of ap-

---

1. MSL cites *United Airlines* for its statement that "[t]he critical inquiry in every such case is whether in view of all the circumstances the intervenor acted promptly after the entry of final judgment." *Id.* at 395–96, 97 S.Ct. at 2470–71. As the sole objection raised before the Court was timeliness, the remark was obviously not intended to state the entirety of the rules governing intervention for purposes of appeal. MSL's reliance on *United States v. LTV Corp.,* 746 F.2d 51 (D.C.Cir.1984), is equally wide of the mark, as it holds merely that in the absence of a motion to intervene, a non-party cannot appeal; it does not state the opposite—that one who has moved to intervene is automatically entitled to an appeal on the merits.

peals, a decision that we necessarily make quite independently and that, as we said in *Building & Construction Trades Dept.*, is governed by the same standards as the district court's decision. It would be paradoxical for us to affirm a district court's denial of intervention for purposes of appeal on deference principles, and then turn around and grant intervention in this court. That paradox of course disappears where only the would-be intervenor seeks to appeal and we affirm the district court's denial of intervention, leaving no appeal in which to intervene; but that leaves a still greater paradox—the court of appeals deferring to the district court on whether to hear an appeal from its judgment. And the paradox is heightened where it turns out that the intervention determination is tied to the merits, as proves the case here. See pp. 782–83 below. Further, for both (intervention for purposes of appeal, intervention in an appeal), the effects are felt—at least initially—in the court of appeals. Finally, we note that our decisions on district court intervention solely for purposes of appeal have by no means always indicated any particular deference, see, e.g., *Smuck v. Hobson*, 408 F.2d at 177–82, nor have those of other circuits, see, e.g., *Romasanta v. United Airlines*, 537 F.2d 915, 917–20 (7th Cir.1976), *aff'd on other grounds sub nom. United Airlines v. McDonald*, 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977); *Yniguez v. Arizona*, 939 F.2d 727, 735–37 (9th Cir.1991) (reviewing timeliness for abuse of discretion but showing no special deference on other criteria), *rev'd on other grounds sub nom. Arizonans for Official English v. Arizona*, —— U.S. ——, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997); *Triax Co. v. TRW, Inc.*, 724 F.2d 1224, 1226–29 (6th Cir. 1984). In any event, as we agree with the district court, we need not worry longer about the scope of review.

## Intervention as of Right

██ Anticipating the application of Rule 24, MSL claims that it was entitled to intervene as of right under Rule 24(a)(2) or permissively under Rule 24(b)(2).[2] For purposes of Rule 24(a)(2), MSL alleges that it has an interest in the action because the ABA's anticompetitive practices have led to denial of accreditation and thus inflicted millions of dollars of injury.[3] We have little doubt—and the United States and ABA do not question—that this is a substantial interest. Putting aside the disclosure aspects of Tunney Act proceedings, however, we are hard pressed to see how "the applicant is so situated that the disposition of the action may as a practical matter impair or impede [MSL's] ability to protect" the interest, as required under Rule 24(a)(2).

To be sure, we may assume arguendo that the more zealously the Department had pursued its antitrust claims, the greater the resulting *advance* in the School's interest in being free of anticompetitive behavior. But MSL points to no case equating failure to promote an interest with its impairment. At least if we may take the state of the world without the Department's lawsuit as the baseline, mere failure to secure better remedies for a third party (whether because of litigative sloth or some more sinister reason) is not a qualifying impairment. And indeed, our Tunney Act jurisprudence seems to make clear that that is the baseline for the Act's substantive purposes—the district court is not to reject an otherwise adequate remedy "simply because a third party claims it could be better treated." *United States v. Microsoft Corp.*, 56 F.3d 1448, 1461 n. 9 (D.C.Cir. 1995).

Of course one can imagine an antitrust consent decree that would affirmatively set the School's interests back (i.e., "impair"

2. Although the language of 15 U.S.C. § 16(e) has something in common with other statutory provisions thought to confer a "conditional right to intervene," under Fed.R.Civ.P. 24(b)(1), see, e.g., 28 U.S.C. § 2323; 7C Charles Alan Wright et al., *Federal Practice and Procedure* § 1911, at 355 (1986), we do not need to resolve the question of whether it qualifies as such. The School does not make that argument and an affirmative finding would here yield a wholly circular exercise;

the Tunney Act looks entirely to Fed.R.Civ.P. 24 to supply the legal standard for intervention.

3. See Motion that the Court Either (A) Grant MSL the Status of Intervenor or, (b) in the Alternative, Grant MSL the Status of Amicus Curiae While Reserving Decision on a Later Grant of Intervenor Status if an Appeal is Sought at 3, *United States v. ABA*, Civil Action No. 95–1211 (D.D.C. Sept. 27, 1995) (Bulky Pleading No. 10).

them). A decree with res judicata, collateral estoppel, or stare decisis effect might very well affect MSL's ability to protect its interests, but as the district court correctly noted the consent decree has no such effect. See Memorandum Opinion, *United States v. ABA*, Civil Action No. 95–1211 (D.D.C. Nov. 1, 1995). A judgment can also set a would-be intervenor back in more subtle ways. In *Smuck v. Hobson*, 408 F.2d 175 (D.C.Cir. 1969), for example, we found impairment in a judgment that *bound* the school board defendants—who chose not to appeal—to adopt certain policies to which the intervenor parents objected. Thus, the judgment impaired their interest in being able to persuade the board to exercise its discretion in favor of policies they preferred. *Id.* at 180–81. At oral argument MSL asserted such an impairment for the first time, saying that because the decree requires the ABA to permit accredited schools to accept transfer students from institutions like MSL (presumably this is tied to the decree provision on transfer credits for courses completed at state-accredited law schools), it has led to an increase in transfers out of MSL. The briefs do not make this claim, however, so the United States and the ABA have had no real opportunity to respond. As our standard rule precludes consideration of a claim raised for the first time in a reply brief absent extraordinary circumstances, see, e.g., *United States v. Whren*, 111 F.3d 956, 958 (D.C.Cir.1997), this newly asserted hazard cannot support a finding of a material risk of impairment.[4]

Even if we found an interest subject to impairment, we would have to consider whether that interest "is adequately represented by existing parties." Fed.R.Civ.P. 24(a)(2). Certainly the interests of MSL and the United States appear closely aligned. We may assume that the Department brought the suit in order to benefit students who must pay the artificially high price of tuition at accredited law schools, or who are disadvantaged because they attend law schools denied accreditation because of the alleged § 1 violation. MSL, a law school seeking to compete by offering a lower cost

legal education but hindered in its efforts by the alleged wrongful denial of accreditation, is not in the class of consumer beneficiaries; but it would benefit, just as they would, from a greater ability to engage in voluntary, mutually advantageous transactions with them. The primary—perhaps only—divergence apparent between the United States and MSL is that while MSL would like the Department to invest resources in the lawsuit without limit, the Department has other claims on its resources. But we do not think representation is inadequate just because a would-be intervenor is unable to free-ride as far as it might wish—a well-nigh universal complaint. Accordingly, we find no right to intervention under Rule 24(a)(2) for purposes of a general appeal.

■ MSL's claim of access to documents, based on its interpretation of the disclosure requirement of 15 U.S.C. § 16(b), poses a different question. That section says, among other things,

> Copies of such proposal [for a consent judgment] and any other materials and documents which the United States considered determinative in formulating such proposal, shall also be made available to the public at the district court and in such other districts as the court may subsequently direct.

*Id.* On the broad view of this provision espoused by MSL, once the proposed consent decree was filed they acquired a legal entitlement to access to a wide range of documents in the government's files. The filing of the proposed consent decree, then, triggers a new baseline against which possible "impair[ment]" is to be measured. District court approval of the decree without insistence on such access would set the School back by denying it documents to which it was entitled. Although the School might be able to gain access through discovery in its own antitrust suit, it might well not, given the various privileges that attach to government documents. See, e.g., *Tuite v. Henry*, 98 F.3d 1411, 1415 (D.C.Cir.1996) (investigatory

---

4. Further, by facilitating advantageous exit from a state accredited school, the provision makes entry into such a school more appealing. This effect may well offset the adverse one. Cf. *Shoreham–Wading River Central School District v. NRC*, 931 F.2d 102, 107 (D.C.Cir.1991).

and deliberative process privileges). Moreover, the alignment of the Department's and MSL's interests falls completely apart on this issue. MSL hopes for the broadest access in the interest of its own antitrust suit, whereas the Department wants to keep such information confidential to facilitate its ability to investigate possible antitrust violations and negotiate settlements. Accordingly, we find that MSL's motion for intervention for purposes of appeal should have been granted with respect to its record disclosure claims. See *United States v. Alex. Brown & Sons,* 169 F.R.D. 532, 539–40 (S.D.N.Y.1996) (granting intervention of right in Tunney Act proceeding to move to compel disclosure of settlement documents).

Permissive Intervention

■ MSL claims in the alternative that it should be allowed permissive intervention under Rule 24(b)(2). First it argues that it sought to prove and remedy some of the very same anticompetitive conduct in its private antitrust suit that is at the heart of this lawsuit, thus satisfying Rule 24(b)(2)'s threshold requirement that the applicant's claim (or defense) have a question of fact or law in common with those of the "main action." The ABA argues that there is no such overlap, because the only substantive issue on appeal is whether the district court properly applied the Tunney Act, an issue that plays no role at all in MSL's independent antitrust claims against the ABA. Insofar as the ABA is saying simply that the search for overlap is a forward-looking exercise, we agree. Here that implies issues alive on appeal and that might be subject to a theoretical remand. But contrary to the ABA's assumption, the issue of Tunney Act compliance does overlap with the underlying merits of the two lawsuits. Although a pre-trial consent decree is necessarily entered without findings of illegal conduct, see *Microsoft,* 56 F.3d at 1460–61, it is certainly possible that the discrepancy between the remedy and undisputed facts of antitrust violations could be such as to render the decree "a mockery of judicial power," *id.* at 1462, and thus require its rejection. In such a case, the upshot would be a remand with at least some prospect of trial on the merits, and the overlap of legal and factual issues in the two plaintiffs' substantive antitrust claims might produce efficiency gains that in turn might warrant intervention. In this case the overlap on those issues amply satisfies Rule 24(b)(2). For example, the operation of the ABA's Section on Legal Education was the main target of the Department's complaint and is the source of MSL's alleged antitrust injury. See *Massachusetts School of Law at Andover v. ABA,* 107 F.3d 1026, 1031–32.

Once a common question of fact or law is found, Rule 24(b)(2) says that the district court, in exercising its discretion, "shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." The "delay or prejudice" standard presumably captures all the possible drawbacks of piling on parties; the concomitant issue proliferation and confusion will result in delay as parties and court expend resources trying to overcome the centrifugal forces springing from intervention, and prejudice will take the form not only of the extra cost but also of an increased risk of error. See generally Edward J. Brunet, *A Study in the Allocation of Scarce Judicial Resources: The Efficiency of Federal Intervention Criteria,* 12 Ga. L.Rev. 701 (1978). The downside of intervention might therefore outweigh the hoped-for advantages—litigative economy, reduced risks of inconsistency, and increased information (which might reduce the risk of error). See *id.* And while intervention nominally for purposes of appeal may permit the court to correct any error made in the district court, it may not easily stop there but may ultimately entail participation in a remand, thereby implying the same drawbacks as intervention in the initial trial proceedings.

At least for intervention for purposes of appeal of a Tunney Act case, the "delay or prejudice" standard of Rule 24(b)(2) appears to force consideration of the merits of the would-be intervenor's claims. If the attempted intervenor shows adequate grounds for upsetting the consent judgment, then delay will be entailed (a remand for further proceedings, possibly including trial), but it would be hard to say that this delay is undue. On the other hand, if the would-be intervenor

is unable to show grounds for upsetting the judgment, there would be no fear of delay—but by the same token no prospect of any gain from intervention. Thus the intervention issue and the merits merge. The result is somewhat similar to National Mediation Board representation certification cases, where we take a "peek at the merits" to determine whether we have jurisdiction to review. See *International Bhd. of Teamsters v. Brotherhood of Ry., Airline & S.S. Clerks*, 402 F.2d 196, 205 (D.C.Cir.1968).[5]

■ Although this circuit has no holding on the standard for intervention for purposes of appeal in a Tunney Act case, our treatment of the subject in *United States v. LTV Corp.*, 746 F.2d 51 (D.C.Cir.1984), meshes well with our recent articulation of our (and the district court's) review of antitrust settlement agreements under the Act. In part because of the constitutional questions that would be raised if courts were to subject the government's exercise of its prosecutorial discretion to non-deferential review, see *United States v. Microsoft Corp.*, 56 F.3d 1448, 1457–59 (D.C.Cir.1995), we have construed the public interest inquiry narrowly. The district court must examine the decree in light of the violations charged in the complaint and should withhold approval only if any of the terms appear ambiguous, if the enforcement mechanism is inadequate, if third parties will be positively injured, or if the decree otherwise makes "a mockery of judicial power." See *id.* at 1462.

■ Similarly, when we discussed the standard for intervention in Tunney Act proceedings in *United States v. LTV*, we suggested that compliance with the public interest requirement would be determinative. In that case we made clear that intervention was a prerequisite for challenging a district court's approval of a consent decree. We observed that the would-be intervenor must first establish that its participation would aid the court, 746 F.2d at 54, and went on to cite

the language of the Sixth Circuit in *United States v. Hartford–Empire Co.*, 573 F.2d 1, 2 (6th Cir.1978), a case which occurred after the passage of the Tunney Act but did not discuss it:

> A private party generally will not be permitted to intervene in government antitrust litigation absent some strong showing that the government is not vigorously and faithfully representing the public interest.

*LTV*, 746 F.2d at 54 n. 7 (quoting 573 F.2d at 2); see also *United States v. Associated Milk Producers, Inc.*, 534 F.2d 113, 117 (8th Cir. 1976) (post-Tunney Act case adopting similar formula without explicit discussion of the Act and also cited in *LTV*). Thus only if the would-be intervenor can point to the specific defects identified by *Microsoft*, or some discrepancy between the remedy and substantially undisputed facts so broad as to render the decree a "mockery of judicial power," will intervention under Rule 24(b)(2) (and reversal) be warranted.

MSL points to nothing that meets this standard. It claims that the decree was deficient in four areas: it failed (1) to lower the high faculty-student ratio required for ABA accreditation, (2) to require the ABA to abandon its ban on for-credit or required bar preparation courses, (3) to ensure the end of secrecy in the accreditation process, and (4) to make the structural changes in the ABA's Section on Legal Education necessary to prevent recurrence of the Sherman Act conspiracy. Of course there is no finding that these practices *were* illegal, and *Microsoft* reminds us that it would accordingly be "inappropriate for the judge to measure the remedies in the decree as if they were fashioned after trial." 56 F.3d at 1461. Nonetheless, even as measured by the Department's *complaint*, the decree clearly represents a material accomplishment.

The complaint identified both the first two items as anticompetitive accreditation stan-

5. Apart from any "undue delay" that intervention might bring about, untimeliness in seeking intervention may justify its denial without consideration of the merits. Unlike MSL, some would-be intervenors may inexcusably neglect to try to enter the proceedings before judgment, at a time when notice of their arguments would have en-

abled the district court to avert the alleged errors. Then, post-judgment intervention for the purpose of challenging those supposed defects on appeal would rightly be denied as untimely. See *NAACP v. New York*, 413 U.S. 345, 366–68, 93 S.Ct. 2591, 2603–04, 37 L.Ed.2d 648 (1973).

dards and practices. And the consent decree was entered only after the ABA took action on each. A report prepared by the ABA Special Commission to Review the Substance and Process of the ABA's Accreditation of American Law Schools and filed with the court by the ABA Board of Governors altered the formula for calculating student-faculty ratio so as to permit part-time and adjunct faculty to count for up to 20% of the faculty component. See United States' Response to Supplemental Public Comments at 23, *United States v. ABA,* Civil Action No. 95–1211 (D.D.C. May 13, 1996). It also changed its practice to encourage law schools to sponsor bar review courses, particularly for students who may be at risk of failing the bar, although it did not alter the rule against required or for-credit bar review courses. *Id.* at 26. Given the entanglement of these issues with educational policy concerns, not to mention the ABA's other defenses, we cannot say that their resolution suggests malfeasance.

As to structural issues, a heading in the complaint asserts that legal educators "Captured the ABA's Law School Accreditation Process," Complaint at 4, *United States v. ABA,* Civil Action No. 95–1211 (D.D.C. June 27, 1995), followed by descriptive details. In fact the decree limited the percentage of law school deans and faculty sitting on the numerous bodies that make up the Section on Legal Education, including the Council, the Accreditation Committee, the Standards Review Committee, and the site evaluation teams (which report to the Accreditation Committee). See Final Judgment at 5–7, *United States v. ABA,* Civil Action No. 95–1211 (D.D.C. June 25, 1996). Finally, although one might logically presume secrecy to be a key tool in pursuit of the alleged conspiracy in restraint of trade, it is never mentioned in the complaint. MSL points out that the Department said in the *proposed consent judgment* that the accreditation process "was kept from public view." See Appellant's Br. at 13. But continuing secrecy, in an otherwise cleansed process, does not necessarily have anticompetitive implications. There is, in short, no reason to infer a sell-out by the Department. Accordingly, MSL does not satisfy the standards for intervention for purposes of appeal.

\* \* \*

■ We found earlier that MSL could intervene to secure review of the district court's rejection of the claim that the Tunney Act requires the government to disclose whatever documentary evidence it has collected in the course of its investigation. MSL relies first on 15 U.S.C. § 16(b), which provides, in relevant part:

> Copies of such proposal [for a consent judgment] and any other materials and documents which the United States considered determinative in formulating such proposal, shall also be made available to the public at the district court and in such other districts as the court may subsequently direct.

15 U.S.C. § 16(b). According to MSL, documents "the United States considered determinative in formulating" the decree include evidentiary material on the defendant's alleged antitrust violations; the government sees the provision as referring only to documents, such as reports to the government, "that individually had a significant impact on the government's formulation of relief—i.e., on its decision to propose or accept a particular settlement." Appellee's Br. at 27. The reference to what "the United States considered *determinative*" seems to point toward the government's view; surely it rules out the claim to *all* the investigation and settlement material, and confines § 16(b) at the most to documents that are either "smoking guns" or the exculpatory opposite. The legislative history in fact supports the government's still narrower reading. Senator Tunney explained, "I am thinking here of the so-called Ramsden memorandum which was important in the ITT case." 119 Cong. Rec. 24,605 (1973). The Ramsden memorandum was a report prepared for the Antitrust Division by an outside consultant analyzing the economic consequences of requiring ITT to divest itself of the recently acquired Hartford Fire Insurance Corporation. The nature of the Tunney Act also cuts against MSL's proposed interpretation. The legislative history displays a firm intent to preserve the government's ability to negotiate settlement agree-

ments, see *Microsoft*, 56 F.3d at 1456, yet a broad disclosure requirement would directly interfere with that ability. The advantages of settlement to a defendant would be seriously undermined if it were sure to result in a discovery bonanza for private claimants. Cf. *United States v. Alex. Brown & Sons, Inc.*, 169 F.R.D. 532, 541 (S.D.N.Y.1996).

MSL also invokes 15 U.S.C. § 16(e)(2), which authorizes the court, in determining whether entry of the proposed consent judgment would be in the public interest, to consider "the impact of entry of such judgment upon ... individuals alleging specific injury from the violations set forth in the complaint." Appellant urges us to read into this provision a section in both the House and Senate Reports stating that:

> The Committee believes that in the majority of instances the interests of private litigants can be accommodated without the risk, delay and expense of the government going to trial. For example, the court can condition approval of the consent decree on the Antitrust Division's making available information and evidence obtained by the government to potential, private plaintiffs which will assist in the effective prosecution of their claims.

S.Rep. No. 93–298, 93rd Cong., 1st Sess. 6–7 (1973); H.R.Rep. No. 1463, 93rd Cong., 2d Sess. 8 (1974). This is a lot of weight to give a piece of legislative history that directly conflicts with the congressional intent to preserve the consent decree as a means of resolving government antitrust cases. As MSL's claim of entitlement to the Department's trove of evidence has no other basis, we affirm the trial court's refusal to order it turned over.

Accordingly we affirm the denial of intervention for purposes of appeal, except with regard to the question of whether the Tunney Act requires the government to make evidentiary material available to the public. On the merits of that claim, we find that the Tunney Act does not require that the government give access to evidentiary documents gathered in the course of an investigation culminating in settlement.

*So ordered.*

WALD, Circuit Judge, concurring in the judgment:

I concur in the judgment and in most of the reasoning of the panel opinion. I do want to stress, however, that in my view, the application of Federal Rule of Civil Procedure 24(b)(2) in this case responds to the unusual nature of proceedings under the Tunney Act, Pub.L. No. 93–528, 88 Stat. 1706 (1974) (codified as amended at 15 U.S.C. § 16(b)-(h) (1994)), as well as to the fact that the would-be intervenor here appeals from the denial of a *post-judgment* intervention motion, and that the applicability of a similar analysis outside of this context should not be assumed. This court long ago observed that the language of Rule 24 required "other than literal application in atypical cases." *Textile Workers Union v. Allendale Co.*, 226 F.2d 765, 767 (D.C.Cir.1955) (*en banc*). I believe that this is such an atypical case, and that we have therefore properly allowed for a somewhat "non-literal" application of Rule 24(b)(2). Thus, I would not expect our opinion to stand for the proposition that the process of appellate review, or of remand for the correction of errors made by the district court, may generally be treated as factors that "delay or prejudice the adjudication of the rights of the original parties" under Rule 24(b)(2). Cf. majority opinion at 782. We treat them as such here so that this court may reserve the discretion to review and correct a district court's "public interest" determination when the record indicates that the determination is contrary to the dictates of the Tunney Act and a non-party well-situated to demonstrate that this is so seeks to subject that determination to appellate review.