### UNITED STATES of America, Plaintiff-Appellee,

Alex. Brown & Sons Inc., Bear Stearns & Co. Inc., CS First Boston Corp., Dean Witter Reynolds Inc., Donaldson, Lufkin & Jenrette Securities Corp., Furman Selz Llc, Goldman, Sachs & Co., Hambrecht & Quist Llc, Herzog, Heine Geduld, Inc., J.P. Morgan Securities Inc., Lehman Brothers Inc., Mayer & Schweitzer, Inc., Merrill Lynch, Pierce, Fenner & Smith, Inc., Morgan Stanley & Co., Inc., Nash, Weiss & Co., Olde Discount Corp., Painewebber Inc., Piper Jaffray Inc., Prudential Securities Inc., Salomon Brothers Inc., Sherwood Securities Corp., Smith Barney Inc., Spear, Leeds & Kellogg, LP, and UBS Securities Llc, Defendants–Appellees,

v.

Donald BLEZNAK, Andrew Bleznak, Richard I. Burstein, Chevra Gemilath Chasodam, Carl S. Clark And Patricia Clark, Daniel D'addario, Roseann D'addario, Maxine Dampf, Jerome D. Derdel, Sulochana Desai, H. Leslie Fineberg, Nicholas Frangiosa, Neal Hansen And Donna Hansen, Timothy Hennessey, Brent Johnson, Charles Kaye, Jerry

Krim, James Krum, Robert Lipinski, John Lorge, The State of Louisiana, Through Its Attorney General, Richard P. Ieyoub, William Lutz, Jr., Dennis Maloney, Kevin Maloney, Richard I. Perlman, Jeffrey Sachs, David Siegel, Two Guys Limited Partnership and their General Partner, Geltmore, Inc., Peter Wasserman, Dennis Weiner, and Sumner Woodrow, Intervenors–Appellants.

Docket No. 97–6130

United States Court of Appeals, Second Circuit.

Argued March 16, 1998.

Decided Aug. 6, 1998.

Leonard B. Simon, Milberg, Weiss, Bershad, Hynes & Lerach, San Diego, California (Arthur M. Kaplan, Michael D. Basch, Richard A. Koffman, Melinda L. deLisle, Fine, Kaplan and Black, Philadelphia, Pennsylvania; Christopher Lovell, Lovell & Stewart, New York City; Robert A. Skirnick, Maria A. Skirnick, Meredith Cohen Greenfogel & Skirnick, New York City, of counsel), for Intervenor–Appellants.

Andrea Limmer, Department of Justice, Washington, DC (Joel I. Klein, Assistant Attorney General, John F. Greaney, Hays Gorey, Jr., John D. Worland, Jr., Catherine G. O'Sullivan, of counsel), for Plaintiff–Appellee.

Philip L. Graham, Jr., Sullivan & Cromwell, New York City (John L. Warden, Sullivan & Cromwell; Jay N. Fastow, Weil, Gotshal & Manges, New York City; Howard Schiffman, Dickstein Shapiro Morin & Oshinsky, Washington, DC; Lewis A. Noonberg, Piper & Marbury, Washington, DC; Robert M. Heller, Kramer, Levin, Naftalis & Frankel, New York City; Richard A. Cirillo, Rogers & Wells, New York City; Frank Holozubiec, Kirkland & Ellis, New York City; James J. Calder, Rosenman & Colin, New York City; Charles E. Koob, Simpson

Thacher & Bartlett, New York City, James T. Halverson, Steptoe & Johnson, Washington, DC; Jeffrey Q. Smith, Cadwalader, Wickersham & Taft, New York City; Catherine A. Ludden, Morgan, Lewis & Bockius, New York City; Robert F. Wise, Jr., Davis, Polk & Wardwell, New York City; Paul B. Uhlenhop, Lawrence Kamin Saunders & Uhlenhop, Chicago, Illinois; Norman J. Barry, Jr., Donahue Brown Mathewson & Smyth, Chicago, Illinois; Robert B. McCaw, Wilmer, Cutler & Pickering, Washington, DC; Matthew Farley, Shanley & Fisher, New York City; William P. Frank, Skadden, Arps, Slate, Meagher & Flom, New York City; Jeffrey I. Weinberger, Munger Tolles & Olson, Los Angeles, California; Brian J. McMahon, Crummy, Del Deo, Dolan, Griffinger & Vecchione, Newark, New Jersey; Charles A. Gilman, Cahill Gordon & Reindel, New York City, of counsel), for Defendants–Appellees.

Before: WINTER, Chief Judge, LEVAL, Circuit Judge,and TRAGER, District Judge.*

WINTER, Chief Judge:

Intervenors—plaintiffs in *In re NASDAQ Market–Makers Antitrust Litigation*, 94 Civ. 3996(RWS)—appeal from two decisions by Judge Sweet. The first approved a consent decree between the United States and appellees. On appeal, appellants challenge a provision of the consent decree that largely prohibits certain audio tapes from being subject to discovery or admitted at trial. Judge Sweet's other decision held that a Settlement Memorandum prepared by the Antitrust Division of the Department of Justice ("government" or "DOJ") was not a "determinative" document subject to public disclosure under Section 16(b) of the Tunney Act, 15 U.S.C. § 16(b). Appellants claim this ruling was also error. We affirm.

The facts underlying this action are more fully set forth in two decisions of the district court. *See United States v. Alex. Brown & Sons, Inc.*, 963 F.Supp. 235 (S.D.N.Y.1997); *United States v. Alex. Brown & Sons, Inc.*, 169 F.R.D. 532 (S.D.N.Y.1996). We assume familiarity with these opinions and summarize here only those facts relevant to this appeal.

This matter grew out of a complaint filed by the government alleging claims under Section 4 of the Sherman Act, 15 U.S.C. § 4. The complaint alleged that appellees had used their positions as "market makers" in NASDAQ stocks to manipulate the price of those stocks so as to increase their profits.

NASDAQ is a computerized stock quotation system operated by the National Association of Securities Dealers ("NASD"). Market makers establish the price of a particular NASDAQ stock by quoting to the system the prices at which they are willing to buy and sell that stock. Because market makers tend to execute a retail customer's order to buy or sell a NASDAQ stock by buying and selling at the quoted prices, the spread between those prices typically determines the market maker's profit on any transaction. Because the spread is an important factor in determining the profit, there is an incentive for market makers to inflate the spread. The core of the government's claim was that appellees conspired to use a quoting convention that widened the dealer spread[1] and coerced non-complying market makers to adhere to this convention. The evidence underlying this claim included 4500 hours of audio tapes of traders' phone calls that appellees had regularly recorded. The practice of taping such calls ceased by the time the complaint was filed.

## A. The Consent Decree

A consent decree was filed simultaneously with the government's complaint. The decree prohibits appellees from, *inter alia,* adhering to the quoting convention, *see* Note 1, *supra;* agreeing to fix the quotes of any

* The Honorable David G. Trager, of the United States District Court for the Eastern District of New York, sitting by designation.

1. This "quoting convention" was an agreement among market makers to avoid "odd-eighths"— i.e., 1/8, 3/8, 5/8, 7/8—buy-and-sell quotes on certain securities. The effect of this convention was to raise the minimum inside spread to 1/4 point, resulting in higher transactions costs to investors and higher profits to market makers.

NASDAQ security or the spread between the buy-and-sell quotes; and harassing or intimidating other market makers.

The decree also establishes an "antitrust compliance program." As part of this program, appellees are required to install a monitoring system on phones used by market makers to buy and sell NASDAQ securities. They must also designate an "Antitrust Compliance Officer" to record and listen to calls placed on these telephones. The decree provides that the compliance officer "shall record (and listen to) not less than three and one-half percent (3.5%) of the total number of trader hours of [the appellees]; provided, however, that in no case shall the total number of hours required to be recorded (and listened to) exceed seventy (70) hours per week." Individuals subject to monitoring are told of the existence of the taping system but not the times when their conversations may be monitored. If the compliance officer discovers a conversation that might violate the decree, the audio tape is to be retained and furnished to the DOJ. Otherwise, tapes may be destroyed after thirty days from the date of recording.

Paragraph IV(C)(6) of the consent decree gives rise to the present issue. It contains restrictions on the discovery or use of the tapes by third parties:

> Tapes made pursuant to this stipulation and order shall not be subject to civil process except for process issued by the Antitrust Division [of the Department of Justice], the SEC, the NASD, or any other self-regulatory organization, as defined in Section 3(a)(26) of the Securities Exchange Act of 1934, as amended. Such tapes shall not be admissible in evidence in civil proceedings, except in actions, proceedings, investigations, or examinations commenced by the Antitrust Division, the SEC, the NASD, or any other self-regulatory organization. . . .

Appellants objected to this paragraph of the consent decree. They argued to the district court that a consent decree cannot diminish legal rights of non-parties and, therefore, that the decree cannot prevent third parties from discovering relevant evidence or introducing it at trial. Nevertheless, the district court approved the consent decree as reasonable. It noted that the intervenors have no current right to tapes created pursuant to the decree because they do not yet exist. *See Alex. Brown,* 963 F.Supp. at 241. It further found that but for the consent decree these tapes would never come into existence. *See id.* Finally, the court noted that the tapes might be subject to an "investigatory privilege" and, thus, might be non-discoverable and inadmissible in any event. *Id.* at 242–43 (citing *In re LTV Secs. Litig.,* 89 F.R.D. 595 (N.D.Tex.1981)). We agree with the district court.

We do not quarrel with the principle asserted by appellants that parties may not use a consent decree to limit non-party rights that would otherwise prevail. *See People Who Care v. Rockford Bd. of Educ. Sch. Dist. No. 205,* 961 F.2d 1335, 1337 (7th Cir.1992). However, the district court's findings—which are not clearly erroneous—that, without Paragraph IV(C)(6), there would be no consent decree and that, without the consent decree, there would be no tapes, distinguish the instant matter from the cases relied upon by appellants. Without the consent decree, there would be no tapes to discover or use as evidence. With the consent decree, there will be tapes subject to Paragraph IV(C)(6).

Cases such as *People Who Care* are thus entirely distinguishable. In that case, a consent decree between various public groups and a school board purported to alter the seniority provisions of a collective bargaining agreement between the school board and a non-party teachers' union. Unlike the present case, therefore, existing rights with tangible consequences were affected. *See also Perkins v. City of Chicago Heights,* 47 F.3d 212, 216–17 (7th Cir.1995) (vacating consent decree that disregarded state law); *Olympic Refining Co. v. Carter,* 332 F.2d 260, 265 (9th Cir.1964) (holding parties cannot limit third-party access to existing evidence through consent decree).

We note two other matters. At oral argument, appellants suggested that appellees have an interest in taping all conversations in question as a means of recording transactions in NASDAQ securities. Indeed, that

had been appellees' practice before the complaint was filed in the instant matter. Appellants suggested that Paragraph IV(C)(6) might therefore shield from discovery or evidentiary use tapes of virtually all such phone conversations. However, Paragraph IV(C)(6) does not purport to shield from discovery or evidentiary use every audio tape created by appellees. Rather, only those tapes made pursuant to the decree are subject to its restrictions. The consent decree requires that appellees tape at least 3.5 percent of the total number of trader hours, or 70 hours per week, whichever is less. Were appellees to tape all of their traders' conversations, they would have difficulty arguing that such tapes were protected by Paragraph IV(C)(6), because the taping would far exceed that required by the decree. We of course do not address, much less define, what level of taping would exceed that protected by Paragraph IV(C)(6).

Second, all we do today is affirm the district court's approval of the consent decree with Paragraph IV(C)(6) in it. We do not purport to address issues arising out of an attempt to enforce this provision in other proceedings or other tribunals. Nor do we address the merits of a claim of "investigatory" or other privilege.

### B. *The Settlement Memorandum*

The complaint and consent decree were the result of a two-year investigation in which the government reviewed thousands of pages of documents, a significant amount of market data, and the audio tapes that appellees had made of their traders' telephone calls. The government also prepared a "Settlement Memorandum" that summarized selected evidence and set forth some of the legal underpinnings of its case. The Memorandum was given to appellees during settlement negotiations.

Appellants argue that the Settlement Memorandum had to be disclosed under the Tunney Act, 15 U.S.C. § 16(b)-(h). Specifically, they claim that the Settlement Memorandum contributed to the DOJ's decision to enter into the consent decree and is a "determinative" document that must thus be disclosed. *See* 15 U.S.C. § 16(b); *United States*

*v. Central Contracting Co.*, 537 F.Supp. 571, 577 (E.D.Va.1982) (holding that "documents that substantially contribute to the determination [by the government] to proceed by consent decree" are determinative documents under Tunney Act) (quotation marks omitted). Section 16(b) provides that all "[c]opies of [a proposed consent decree] and any other materials and documents *which the United States considered determinative* in formulating such [a proposed decree], shall ... be made available to the public at the district court...." 15 U.S.C. § 16(b) (emphasis added).

The district court found that the Settlement Memorandum was "the result of the internal effort of DOJ to organize its evidence for the purpose of evaluating its case and presenting it to Defendants in settlement negotiations." *Alex. Brown*, 169 F.R.D. at 541. It was also intended to "facilitate negotiations by demonstrating to Defendants the supposed strength of the Government's case." *Id.* at 536. The district court concluded that, because the Memorandum did not determine the government's decisions concerning the consent decree but merely summarized pieces of evidence, it was an organizational tool, not a determinative document. *See id.* at 541.

■ We again agree with the district court. The range of materials that are "determinative" under the Tunney Act is fairly narrow. *See Massachusetts School of Law at Andover, Inc. v. United States*, 118 F.3d 776, 784 (D.C.Cir.1997). The history of the Act demonstrates that its thrust was to bring into "sunlight" the government's motives for entering a decree, thereby taking out of the "twilight" the government's decision-making processes with respect to antitrust settlements. H.R.Rep. No. 93–1463 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6535, 6537. The use of the word "determinative" in Section 16(b) "rules out the claim to all the investigation and settlement material, and confines § 16(b) at the most to documents that are either 'smoking guns' or the exculpatory opposite." *Andover*, 118 F.3d at 784. Indeed, were the law otherwise, "determinative" would come to mean "relevant."

■ Given this view of the Tunney Act, the Settlement Memorandum cannot be deemed a determinative document. There is nothing to suggest that its existence was a substantial inducement to the government to enter into the consent decree. Moreover, as the district court found, the Memorandum was prepared at least as much to induce appellees to enter into the decree as to persuade the government to do so. *See Alex. Brown*, 169 F.R.D. at 542. (Memorandum here was "internal evaluation . . . undertaken to persuade defendants to enter into a consent decree.").[2]

We therefore affirm.

**2.** In connection with this issue, appellants have filed a motion asking us to take judicial notice of several court filings cited in their brief. Because these filings are not relevant to our disposition of this appeal, we deny the motion as moot.

